**The HOME INSURANCE INDEMNITY COMPANY, Appellant,**

**v.**

**Clemente GUTIERREZ, Appellee.**

**No. 230.**

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 17, 1966.

Rehearing Denied Dec. 15, 1966.

W. F. "Pete" Baker, of Allison, Clark & Baker, Corpus Christi, for appellant.

Darrell B. Hester, of Hester & Toscano, Harlingen, for appellee.

## OPINION

NYE, Justice.

This is a suit by appellee to mature an award of the Industrial Accident Board, for 12 percent statutory penalty, and for attorneys fees under Article 8307, Sec. 5a, Vernon's Ann.Civ.St. This Texas Workmen's Compensation statute provides that when the Industrial Accident Board enters an award requiring the insurance carrier to make payments to an injured employee and the carrier thereafter fails or refuses, "without justifiable cause" to continue to make such payments promptly, the injured employee may bring suit to mature the award and to recover 12 percent penalty and attorneys fees.

Trial was had before the court without the aid of a jury. The court being of the opinion that the company failed or refused without justifiable cause to make payments promptly as they matured, rendered judgment in the amount of $1,302.-00, being the full amount of the matured award plus $156.24 representing 12 percent penalty and attorneys fees in the amount of $325.00. The company has perfected its appeal to this court.

From the findings of fact and the undisputed evidence, it appears that the plaintiff was injured while working. He instituted proceedings under the Workmen's Compensation Act which resulted in an award of the Industrial Accident Board. Under this award plaintiff recovered compensation at the rate of $35.00 per week for nine weeks followed by 141 weeks at $7.00 per week. He filed his notice of intention to appeal from the board's award. However, neither he nor the insurance company perfected an appeal with the result that the board's award became final on June 7, 1965. On the date the award became final, the defendant company owed nine payments of $35.00 each and seventeen payments of $7.00 each for a total of $414.00. Whereupon the defendant, on the date the award became final delivered through the United States mail two instruments which the defendant designates as "claims drafts" representing the amount of the compensation due the plaintiff as of June 7, 1965.

It is these instruments that gave rise to the controversy. The plaintiff designates them as being "inter-office memorandums, unlike any instrument known to man or law." The trial court concluded that the instruments were non-negotiable; that they were not checks as defined by Article 5947, Sec. 185, V.A.C.S., nor were they bills of exchange drawn upon a bank and payable upon demand; and that these two instruments did not constitute "payment", as they were required to be accepted in New York at the home office of the defendant before payment could be made through a New York bank to plaintiff. Therefore, the court concluded the defendant failed to make said payments

promptly as they matured, as that term is used in Article 8307, Sec. 5a, V.A.C.S.

The form of the two instruments in question read as follows:

5470853

Insurance
THE HOME          COMPANY
Indemnity

| Claim Number | Suf. | Policy Number | Insured Name | Issuing Office | Date |
|---|---|---|---|---|---|
| 63SC503,453 | 2 | WC398938 | JOHNIE L. WEST, ET AL | S.A. | 6/3/65 |

Upon acceptance
Pay to order of CLEMENTE GUTIERREZ AND
DARRELL HESTER, HIS ATTORNEY  $_____

In full and final settlement of COMPENSATION PER INDUSTRIAL ACCIDENT BOARD AWARD     PERIOD 2/5/65 to 6/4/65   occurrence date 12/3/64
bg

Payable through
FIRST NATIONAL  DARRELL HESTER, ATTORNEY
 CITY BANK         PO BOX 1269                    /s/  Bernice Gallogher
55 Wall St., N.Y., N.Y. HARLINGEN, TEXAS            For the Company

(the reverse side of this instrument is as follows)

Please Deposit This Draft Within
Thirty (30) Days
DRAFT MUST BE ENDORSED
BY ALL PAYEES

THE ENDORSEMENT(S) HEREON CONSTITUTES
A RECEIPT AND FULL RELEASE FOR THE
CLAIM(S) MENTIONED IN THIS DRAFT

PREVENT FORGERY
KNOW YOUR ENDORSER
REQUIRE IDENTIFICATION

One instrument had $119.00 written on it opposite the dollar sign and the other instrument was identical except that the first number in the upper left hand corner was 5470851 and had the amount of $315.00 opposite the dollar sign.

Two days after receipt of the instruments, plaintiff's attorney wrote the defendant company on June 9, 1965, advising the company that they objected to the medium of payment since neither he nor plaintiff Gutierrez had agreed to accept a check, draft, or inter-office memorandum.

They further declared that the entire claim was due. This letter was received in San Antonio by the defendant company on Friday, June 11. On Monday, June 14, plaintiff instituted suit against the defendant company contending that the company made no legal tender of the portion of the award due and, therefore, the entire claim is due by virtue by Article 8307, Sec. 5a, V.A.C.S.

In other findings of fact, the court found that the defendant had never made, nor tendered any payments to plaintiff prior to

the receipt of the two instruments; that no custom or usage had been established between plaintiff and defendant since there was an absence of any prior dealings between them; and that after receiving the letter and the two instruments on June 11 the defendant made no further effort to make tender or payment of the matured portion of the award in any form to the plaintiff up to and including the time of trial.

The two instruments were prepared in the San Antonio office and were mailed to the plaintiff's attorney in Harlingen, Texas. The court further found that the two subject instruments in the form prepared by the defendant would not be accepted by local banks when deposited; that before such payments of the amount shown on the instrument would be made, these instruments were required to first go to the home office of defendant in New York City, and there had to be accepted by the home office of the defendant. Thereafter, they were payable *through* The First National City Bank in New York City, New York.

The defendant after suit was filed, mailed the same kind of instruments each week by certified mail, return receipt requested, addressed to the plaintiff's attorney at the post office box in Harlingen marked "deliver to addressee only". The court further found that it would be necessary for plaintiff's attorney to personally go to the Harlingen post office to get possession of them under postal regulations. No employee or agent of the attorney could get delivery of them. Plaintiff's attorney did not go to the Harlingen post office personally and sign for these nineteen instruments, and they were subsequently returned to the defendant by the post office department as "unclaimed". There was no agreement between plaintiff and defendant as to the mode or manner of payment. After the *nineteen weekly* instruments were returned to the defendant, the defendant company made no attempt to make pay·

ment in other form of the amounts due under the award and no part of the award has ever been actually received by the plaintiff.

The court concluded that in order for plaintiff to receive any payment upon the two instruments plaintiff and plaintiff's attorney were required to present them for acceptance by virtue of Article 5942, Sec. 143(1) and (2), V.A.C.S.; that no drawee was named in the instruments or otherwise indicated therein with reasonable certainty as to satisfy the requirement of form for a negotiable instrument under Article 5932, Section 1(5). The court further concluded that the defendant, having received plaintiff's objection to the medium of tender on June 11, 1965, was obligated to make tender of payment in legal tender of the United States. When the plaintiff filed suit defendant had still not made any other tender and such failure constituted a further failure "to make said payment promptly" as that phrase is used in Article 8307, Sec. 5a, V.A.C.S.

The court concluded as to the nineteen weekly installments that, there being no place specifically fixed by law as to where payment was to be made, the defendant was required to seek out the plaintiff and make payment; that defendant company failed to do so by requiring the plaintiff to have plaintiff's attorney come in person to the Harlingen post office to get possession of the same; that the burden of proving a tender of payment was upon the defendant and the defendant failed to discharge this burden, both as to the original payments due on June 7, 1965 and as to the weekly payments due each week thereafter, to the date of trial.

The appellant assigns eight points of error to the effect that Article 8307, Sec. 5a, V.A.C.S., is not applicable under the facts and circumstances in this case; that if such statute is applicable the trial court erred in holding that the defendant com-

pany failed or refused to make payments promptly without justifiable cause; that there was no evidence or insufficient evidence that no custom or usage was established between the plaintiff and the defendant; that there was no evidence nor insufficient evidence that defendant company's delivery of the claims draft did not constitute payment; that the trial court erred in holding that under the facts and circumstances the concept of payment under the statute in question required legal tender for the fact that there was no evidence to support such finding; and, that the trial court erred in considering facts or actions of the parties after suit was filed by the plaintiff.

The appellate courts of Texas have been called upon many times to construe the applicability of Sec. 5a of Article 8307, V.A. C.S. In the leading case of Minor v. London Guarantee & Accident Co., 280 S.W. 163, Tex.Com.App. (1926), opinion adopted by the Supreme Court, the court, in construing this section, stated that the provisions of this statute imposes the duty upon the insurance company to pay the award of the Industrial Accident Board according to the terms of the order entered by the board. The failure of the company to comply with this obligation—"to pay the amount due at once, and to make the weekly payments promptly as they matured—constituted prima facie a failure and refusal to abide by the order, and gave to the plaintiff * * * the right to institute suit upon the order of the board to establish same", by maturing the entire claim, recovering the total amount of the award, together with 12 percent damages and reasonable attorney's fees. "Mere neglect to pay either the amount due under the order of the board, or the weekly payments as they became due, does not show justifiable cause for defeating" * * * such claim.

It has been held by our Supreme Court that the term "at once", means within a reasonable time. Maryland Casualty Co. v. Lewis, 151 Tex. 480, 252 S.W.2d 155

(1952). In the Lewis case, supra, the award became final at midnight. Suit was filed by the claimant at 9:30 a. m. the day the award became due, one hour and a half after the business day had started, and one half hour after the banks had opened for business. The court held that the suit was brought prematurely and denied the claimant the 12 percent penalty and attorney's fees. This delay of 9½ hours was not an unreasonable length of time. It, therefore, becomes important for us to consider the facts of the case before us in the light of the Lewis case and, at the same time, consider the other cases in which our appellate courts have held that payments of awards made in 15 days, 4 days, 4 days, 5 days, and 17 days after the award became final, was not payment "at once", or within a reasonable length of time. Minor v. London Guarantee & Accident Co., 280 S. W. 163, Tex.Com.App. (1926); Dixon v. United States Fidelity & Guaranty Co., 293 S.W. 291, Tex.Civ.App., error dismissed, (1926); Ocean Accident & Guarantee Corporation, Ltd. v. Manning, 5 Cir., 24 F.2d 202, (1928); Texas Employers' Ins. Ass'n v. Harrington, Tex.Civ.App., 61 S.W. 2d 167, (Tex.Civ.App., 1933); Travelers Insurance Company v. Hill, 163 Tex. 81, 351 S.W.2d 530 (1961). The cases and the statute are the only yardstick by which we measure the rights of the parties. The Act specifies no days of grace, unassociated with justifiable cause, in which the company may safely indulge procrastination in the payment of its obligation to an injured employee. Texas Employers' Ins. Ass'n v. Harrington, supra.

First, we should consider the medium of attempted payment by the defendant company. The award became final on June 7, obligating the company to pay the amount of the award that had matured on that date. This was a debt owed by the company to the plaintiff. The Industrial Accident Board's award made it a debt when neither party perfected an appeal from the board's award. It, therefore, was

not a claim on behalf of plaintiff but was a debt established by law. In absence of an agreement, a check, bill of exchange, or draft does not of itself discharge or constitute payment of a debt. 70 C.J.S. Payment § 23, p. 229. Nor does the presentation of such an instrument constitute a legal tender.

■ "A tender is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation." It consists of the actual production of the funds and offer to pay the debt involved. "The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession." Baucum v. Great American Insurance Co. of New York, 370 S.W.2d 863, Supreme Court, (1963). Although the delivery to or the acceptance by the creditor of the debtor's check, is often treated for convenience as the passage of money, it is not payment. Pitts v. G. F. C. Corporation, Tex.Civ. App., 228 S.W.2d 261; Mashek v. Leonard, Tex.Civ.App., 186 S.W.2d 745, error dismissed; Jefferson Standard Life Ins. Co. v. Lindsey, Tex.Civ.App., 94 S.W.2d 549, error dismissed; Renchie v. John Hancock Mut. Life Ins. Co., Tex.Civ.App., 174 S.W. 2d 87; Friends In Need Society of Bell County v. Peterson, Tex.Civ.App., 9 S.W. 2d 1110; and Mary Couts Burnett Trust v. Samuels, Tex.Civ.App., 59 S.W.2d 358.

■■ It is clear that the instrument in question was not a negotiable instrument and there was no agreement between the plaintiff and defendant company for the plaintiff to accept such instrument in discharge of the defendant's obligation. There was an absolute absence of any prior dealings between the parties insofar as payment was concerned. There was sufficient evidence to support the trial court's finding that there had not been any prior dealings between the parties which would justify plaintiff's acceptance of the instrument in question.

■ The instruments required more of the plaintiff than that which is required by law. Although the defendant had the right to demand a receipt or release (Baucum v. Great American Insurance Co. of New York, supra), the company did not have the right to require the plaintiff to release the claims mentioned in the instrument, as a condition precedent to the forwarding of the instrument to New York City, for acceptance by the defendant company's home office there, before payment could be made through a New York bank, to be subsequently honored many days later in Harlingen, Texas. This was not a valid or legal tender of money. The plaintiff was within his rights in refusing to accept the defendant's instruments as they did not constitute payment under the facts and circumstances of this case.

■ The defendant company argues that there was a custom or usage in the insurance industry that payment of the debt could be accomplished by the delivery of this type of an instrument. This was the defendant's position throughout, as no other tender by any other form was attempted by the defendant even after the suit was filed and other weekly debts accrued under the award. The trial court made no finding that such custom and usage as contended by defendant was recognized. The defendant company made no objections to the findings of fact of the trial court and made no request for further additional or amended findings under Rules 298 and 299, Texas Rules of Civil Procedure. The court did find that there was no custom or usage between plaintiff and defendant. Since there was evidence of probative force supporting this finding, we are without authority to disturb it. Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951).

Custom has been defined as a practice long used and received that may have acquired the force of law. 55 Am.Jur. 266, Usages and Customs ¶ 3. The courts have repeatedly declared that usage or custom, in order to be binding on a person, must be general, or at least so general and universal in character that knowledge of it may well be presumed. 58 Tex. Jur.2d 31, Sec. 5. We find no evidence in the record that such a custom and usage would, as a matter of law, constitute an affirmative defense which would justify the defendant company to rely exclusively upon the instruments in question as the mode of payment under the facts of this case. Since at best the custom or usage would be affirmative defense to justify the method of payment, and since the defendant company made no request for any findings on any element as justifiable cause, such argument here is without merit. It has been waived. McKinney v. White, Tex.Civ.App., 278 S.W.2d 553.

It is undisputed that the defendant company received plaintiff's objection to the mode of payment on Friday, June 11, 1965. The company contends that after receipt of such objection it still had a reasonable time to make payment. The evidence shows that the company had some part of Friday, June 11, all of Saturday, and some part of Monday, plus the intervening Sunday to take measures to meet its responsibility to pay "at once". As the Fifth Circuit suggests in Ocean Accident & Guarantee Corporation, Ltd. v. Manning, 24 F.2d 202, the reliable sources of Western Union were always available to defendant. The evidence further showed that prior negotiations for settlement had taken place between plaintiff's attorney and defendant's agent who resided in McAllen, Texas, prior to the time the award became final. This agent in McAllen, some 34 miles and one hour away from plaintiff's attorney, made no attempt to contact plaintiff during the intervening time. The trial court in any event was correct in concluding that after

defendant had received plaintiff's objections to the medium of tender on June 11, the company was obliged to make legal tender "at once". And that during the intervening time and until plaintiff's suit was filed, the fact that the defendant company had still not made any further tender, such inaction on behalf of the company, constituted a further failure to "make said payments promptly."

The defendant company already was under the duty by law to pay "at once". As found by the trial court, such instruments were not negotiable in character at the local banks, and the company was notified of their unacceptability by the plainitff and of the prospective suit; therefore, the significance of the duty to pay "at once" rose to a higher level. Opportunity from Friday to Monday was afforded the company to make payment in legal tender before suit was filed. This was not done. We, therefore, hold that the defendant did not discharge its duty to the plaintiff to pay the debt established by the board's award.

Appellant complains that the trial court erred in considering evidence of what took place after suit was filed. We are not unmindful of our Supreme Court's holding in Maryland Casualty Co. v. Lewis, supra, that the claimant's pleadings will be strictly construed. However, there are material facts which distinguish this case. Here the parties agreed and stipulated that the subsequent payments due the plaintiff were mailed by certified mail, return receipt requested, but not picked up by plaintiff's attorney and were subsequently returned to the company. The defendant company in its amended answer plead that the plaintiff had harassed the defendant company, not only by returning the instruments in question, but had instigated the law suit in question, and that the defendant company had continued to tender drafts in the customary, usual, and normal usage of the insurance industry through the United States mail. In the Lewis case,

supra, the plaintiff was relying upon the inaction of the company for the first 9½ hours after the award became final. Here suit was filed 7 days after the award became final. In Lewis the company made tender into court of all payments then due at the time it filed its answer. Here, there was no such tender. There was no objection to the evidence of what transpired after suit was filed by the defendant. It is clear to us that the company was taking the position of insisting, from the beginning unto the end, that the type of instruments it used constituted payment and no other or further tender was necesary. What transpired after suit was filed was circumstantial evidence of the defendant company's prior attitude. The defendant persisted in sending the weekly payments in exactly the same form, well knowing that they were not acceptable to the plaintiff. Defendant never did try to meet plaintiff's objection to the instruments in question.

We believe that the defendant's subsequent conduct was evidence, properly received without objection; that defendant was relying exclusively upon the instruments in question; and that the plaintiff was obliged to accept such instruments as payment even after objection had been made.

The trial court found that 19 weekly installments were mailed to the post office for delivery to "addressee only". Our Supreme Court in the Baucum case, supra, said that "[a]t common law where no place of payment is specified or fixed by law the rule is that the tenderer must seek the tenderee and make a tender to him if he can be found by the exercise of due diligence." This was not done by the defendant company even after it had notice of the plaintiff's demand for legal payment.

Appellant's points are overruled. The judgment of the trial court is affirmed.