NO. 07-00-0175-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 13, 2001
_____

HOXIE IMPLEMENT CO., INC,

Appellant

v.

JIM BAKER, individually and d/b/a BAKER HARVESTING,

Appellee
_____

FROM THE 84th DISTRICT COURT FOR HANSFORD COUNTY;

NO. 4281; HON. WILLIAM D. SMITH, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Hoxie Implement Co., Inc. (Hoxie) appeals from a final judgment entered in favor of Jim Baker, individually and d/b/a Baker Harvesting (Baker). Through that judgment, the court awarded Baker, among other sums, $251,884.95 against Hoxie. The latter now presents three issues for review. The first concerns whether the trial court erred in granting Baker a directed verdict upon his claim of usury. Through the second, Hoxie argues that it established, as a matter of law, its right to recover $3,137.70 from Baker on an open account and that the trial court erred in denying such recovery. The third point involves the

propriety of the attorney's fees awarded Baker.  We affirm in part and reverse and remand in part.

## *Background*

Hoxie sued Baker to recover damages for breach of contract.  The claims were founded upon Baker's alleged failure to purchase six combines from, and pay an open account of $3,137.71 due, Hoxie.  According to Hoxie's live pleading, the failure to purchase the six combines resulted in it suffering damage in the form of "$90,000.00 anticipated profit . . . plus actual economic interest losses and costs of $59,183.28 [which losses continue] to accrue at the rate of $252.92 per day until the combines [are] sold . . . plus $47,252.70 dealer's rebate . . . plus prejudgment interest at the highest rate allowed by current Texas law . . . ."

Baker answered the petition and generally denied the allegations.  It also counterclaimed for usury.  According to Baker, the "Plaintiff's demand letters, pleadings and disclosure statement contain[ed] demands for payment . . . of damages in the amount of $468,990.56.  This sum include[d] alleged interest charges in the amount of $91,135."  Baker continued by averring that "Plaintiff states this is for pre-judgment interest and actual damages suffered, at the actual rate at which they are accruing and costing the Plaintiff on the purchase price of the combines from Case IH."  Furthermore, because the "parties . . . never agreed upon an interest rate" the maximum allowable interest was six percent.  Yet, the rate levied by "Plaintiff greatly exceed[ed] the maximum lawful rate . . . ."

At trial, a demand letter written by counsel for Hoxie and dated January 15, 1998 was admitted into evidence.  Attached to it was a "petition" which Hoxie said it "may" file if Baker did "not make adequate arrangements for the payment in full of all sums due and

2

owing to Hoxie." The letter also admonished Baker to "read the allegations contained in the petition carefully." So too did the company inform him (in the letter) that his "failure to pay the agreed upon sum when due and owing results in damages . . . in the form of interest costs of 18% per annum from September 1, 1997 until paid." Next, via the petition which Baker was directed to "read . . . carefully," Hoxie twice averred that Baker was indebted to it not only in the amount of $1,025,636.00 but also for "interest thereon at the rate of 18% per annum from September 1, 1997, until paid in full."[1]

Also admitted into evidence was testimony that Hoxie claimed an amount of interest equal to $91,135.49. This sum was sought as damages and purportedly equaled the interest it was being charged once it acquired the combines. Yet, while undergoing cross-examination, the representative for Hoxie admitted that the company had incurred no such interest charges but, nonetheless, sought the $91,000 amount from its opponent.

Once Hoxie completed its presentation of evidence, Baker moved for an instructed verdict on the questions of breached contract and usury. As to the latter, it was undisputed that 1) there existed no agreement wherein Baker consented to pay any interest to Hoxie for any purpose and 2) the interest which Hoxie attempted to capture from Baker (irrespective of its characterization) equaled or exceeded 12% per annum. Furthermore, Baker argued that he established usury via "two different approaches." The first concerned the averments in the January 15th demand letter as well as the claim for $91,000 as interest costs when no such costs were actually incurred. The second involved the levy of pre-judgment interest prior to the time authorized by statute. Finally, both the debt

---

[1]The $1,025,636.00 referred to the purchase price of the combines.

3

represented by the contract to purchase combines and the debt reflected in the $3137.71 open account were encompassed within the motion for instructed verdict.

Upon hearing argument from all involved, the trial court refused to direct a verdict on the claim of breached contract. Regarding the allegations of usury, however, it stated:

. . . the court has viewed those letters - I think counsel is right, those letters are a demand. And I think that is what triggers the troublesome problem here. The court has always had trouble personally with that. I don't like that application of law. I think it's harsh. I think it's very, very harsh. But I feel like at this point, based on the record as it is at this point, that the Court has at this time no choice but to grant, as a matter of law, the motion for instructed verdict on usury *under both positions* which the defendant has pointed out. And the court at this time will do so. (Emphasis added).

Thereafter, the trial court submitted the issue of breached contract to the jury. The latter found that no breach had occurred. Consequently, judgment was entered declaring that Hoxie recover nothing against Baker but that Baker recover $251,884.95 and attorney's fees from Hoxie.

### Issue One

Hoxie initially contends that the trial court erred by instructing a verdict on the claim of usury. This is allegedly so because 1) no debt was owed by Baker, "*and in absence of an absolute obligation to pay a definite principal amount, there cannot be a charge of usurious interest,*" 2) Hoxie did not charge a usurious interest, but if "it did, that charge was [subsequently] corrected . . ." and 3) any interest levied on the account receivable was

4

never communicated to Baker. (Emphasis added). We sustain and overrule the point in part.

### a. Contingent Obligation and Correction

The contentions regarding the contingent nature of the debt and the subsequent correction (if usury was actually sought) were not urged at the time the trial court debated whether to grant an instructed verdict.[2] Hoxie did not broach these arguments until it filed its motion to vacate the judgment or, alternatively, for new trial. And, therein lies the problem, for authority requires that objections to a trial court's proposed conduct be urged in a timely manner. TEX. R. APP. P. 33.1(a); *St. Paul's Surplus Lines, Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998). The requirement to act timely encompasses not only the objection itself but also all the grounds allegedly supporting it. In other words, both the objection and all legal basis for it must be timely asserted. *Credille v. State*, 925 S.W.2d 112, 115-16 (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd.). Furthermore, an objection is considered timely urged when asserted at the earliest opportunity, *Russell v. State*, 904 S.W.2d 191, 196 (Tex. App.--Amarillo 1995, pet. ref'd.), or when the potential error becomes apparent. *Perry v. State*, 957 S.W.2d 894, 896 (Tex. App.--Texarkana 1997, pet. ref'd.). Finally, including the objection and grounds in a motion for new trial does not satisfy the contemporaneous objection rule if the complaint could have been urged earlier. *St. Paul's Surplus Lines, Co. v. Dal-Worth Tank Co.*, 974 S.W.2d at 53.

---

[2]Nor did Hoxie plead that it made a bona fide mistake which it subsequently corrected (assuming a mistake was made) in response to Baker's counterclaim. It is clear that defenses such as bona fide mistake and correction must be affirmatively pled before one can claim their protection at trial. *Tri-county Farmers Co-op v. Bendele*, 641 S.W.2d 208, 209 (Tex. 1982). Thus, in failing to affirmatively plead them, Hoxie waived them.

5

Here, the parties debated the propriety of the motion for instructed verdict before the motion was granted. At no time during that debate did anyone posit that the motion should be denied because the debt which Hoxie attempted to collect from Baker was a contingent debt or that the demand for interest contained in the January 15th missive was a mistake which was subsequently corrected. So, the contentions were not urged at the earliest possible opportunity or at a time which afforded the trial court a chance to avoid the supposed error. Thus, Hoxie waived them, and its motion for new trial did not cure the situation.

b.    *Demanding Usurious Interest*

Next, in reference to the argument that Hoxie never demanded usurious interest, the implement dealer propounds several arguments. They concern both the debt represented by the supposedly breached purchase agreement and that represented by the account receivable. We address each in turn.

1.    *Breached Purchase Agreement*

As to whether Hoxie sought usurious interest while attempting to collect damages due to the allegedly breached sales agreement, we need address only one ground of Baker. It concerns the January 15th letter and its substance. Again, Baker contended at trial that it was a vehicle through which usurious interest was demanded. According to Hoxie, however, the letter did not constitute a "charge" of interest for purposes of the usury statutes. Rather, it merely informed its opponent 1) that the petition "may" be filed and 2) of interest costs Hoxie incurred in acquiring and holding the combines for Baker. We disagree with Hoxie.

6

Section 305.001 of the Texas Finance Code penalizes one for contracting for, charging, or receiving interest that is greater than the amount authorized by law. TEX. FIN. CODE ANN. §305.001(a) (Vernon 1998). Furthermore, the solicitation, through a demand letter, of interest exceeding that allowed by law may constitute a "charge" for purposes of §305.001. *Woodcrest Assoc., Ltd. v. Commonwealth Mortgage Corp.*, 775 S.W.2d 434, 437 (Tex. App.--Dallas 1989, writ denied); *Coppedge v. Colonial Sav. & Loan Ass'n*, 721 S.W.2d 933, 936 (Tex. App.--Dallas 1986, writ denied). All depends upon the intent of the party sending the letter. *See Nat'l Bond & Inv. Co. v. Atkinson*, 254 S.W.2d 885, 888 (Tex. Civ. App.--Amarillo 1952, writ dism'd w.o.j.) (allowing the admission of parol evidence to determine whether the parties intended to make a usurious loan); *Great Southern Life Ins. Co. v. Williams*, 135 S.W.2d 241, 249 (Tex. Civ. App.--Amarillo 1939, writ dism'd judgmt. cor.) (stating that an agreement should not be construed as usurious unless "it was the manifest intention of the lender to charge and collect more interest than that . . . permitted by law"). And, by intent we do not mean an intent to engage in usury. Rather, the intent to assess the rate charged is determinative. *William C. Dear & Assoc., Inc. v. Plastronics*, 913 S.W.2d 251, 254 (Tex. Civ. App.--Amarillo 1996, writ denied); *see Cochran v. American Sav. & Loan Ass'n*, 586 S.W.2d 849, 850 (Tex. 1979) (stating that the focus is upon the intent to make the bargain as opposed to the intent to charge a usurious interest rate).

Next, while parol evidence may be utilized, *National Bond & Inv. Co. v. Atkinson*, 254 S.W.2d at 888, the document containing the allegedly usurious demand is the primary source from which to devine the drafter's intent. It must be construed as a whole. *Parhms*

*v. B & B Ventures, Inc.*, 938 S.W.2d 199, 203 (Tex. App.--Houston [14th Dist.] 1997, writ denied). Furthermore, if susceptible to two or more reasonable but differing interpretations, the interpretation adopted must be that which renders the document non-usurious. *Id.*; *Great Southern Life Ins. Co. v. Williams*, 135 S.W.2d at 249. This is so because we presume that the parties intended to comply with the law. *Id.* Finally, only when it can be said that, upon affording the document a fair and reasonable construction, the demanding party intended to levy the interest rate charged, may we find usury (assuming the rate levied exceeded that allowed by law). *Id.* With this said, we turn to the January 15th letter and its content.

Immediately, we note the two components of the January 15th correspondence. They consist of a cover letter and a draft of an original petition. Furthermore, in directing Baker, via the letter, to "[p]lease read the allegations contained in the petition carefully," Hoxie undoubtedly intended both items to be considered as part of its communication. Next, in so considering them, we discover 1) an allusion to a breach of contract and "sums due and owing," 2) the statement that "a lawsuit *will be filed* within the next ten (10) days," 3) reference to Hoxie suffering damages in the "form of interest costs of 18% per annum" from the date performance was allegedly due "until paid," 4) a statement that Baker is indebted to Hoxie "in the amount of $1,025,636.00, plus interest thereon at the rate of 18% per annum from [the date performance was due] until paid in full," and 5) a prayer demanding recovery from Baker of the $1,025,636.00 sum along with interest "on the purchase price from September 1, 1997, at the rate of 18% per annum until paid in full." (Emphasis added). Each of these allegations was set forth in a direct and positive manner.

8

*See Parhms v. B & B Ventures, Inc.*, 938 S.W.2d at 203 (stating that a contract will not be read as violative of the usury laws unless by its "express and positive terms" it evinces an intent to exact more interest than allowed by statute). That is, Hoxie did state in the cover letter that the accompanying petition "*may* be filed of record." Yet, the specific claims and demands in the cover letter itself and the petition were not worded in a contingent manner. Rather, Hoxie expressly and unequivocally informed Baker of the sums it considered due from him. In other words, while Hoxie may have left open the possibility that some other petition could be filed, nowhere did it suggest that the claims uttered in the petition were less than certain or that they would be different if another petition were filed. Again, Hoxie told Baker on or about January 15th not only that a lawsuit "will be filed" but also that the specific sums mentioned were purportedly due and recoverable from him. And, it is the words in the January 15th communication, not what Hoxie may or may not say in the future, which control.

Furthermore, that the interest sought was of the type within the scope of §305.001 of the Finance Code is beyond reasonable dispute, as we now illustrate. For purposes of §305.001, interest means "compensation for the use, forbearance, or detention of money." TEX. FIN. CODE ANN. §301.002(a)(4) (Vernon Supp. 2001). Furthermore, money is detained under §301.002(a)(4) when a debt has become due and payment has been withheld. *Sunwest Bank v. Gutierrez*, 819 S.W.2d 673, 675 (Tex. App.--El Paso 1991, writ denied). Hoxie argues that the interest it sought through the January 15th cover letter was not to recompense it for Baker's withholding of payment. Rather, it was to reimburse it for interest it incurred in obtaining the combines and performing the agreement. Yet, the manner in which the demand for same was worded belies the contention. For instance,

9

each time it mentioned interest, it appended to the reference the phrases "until paid" or "until paid in full." The use of those phrases is most telling for they indicate that the interest due would continue to accrue until the *principal* or *debt* was paid. And, if it were to continue to accrue until the debt from Baker to Hoxie was paid, the interest in question could hardly be that incurred by Hoxie *vis-a-vis* some creditor of its own. Additionally, if it were of the latter type (*i.e.* interest accruing on a debt Hoxie owed to some third-party), it would stop accruing when Hoxie paid its own creditor. However, as worded in the January 15th correspondence, the interest was to accrue until Baker paid Hoxie. Given this, we can only conclude that the interest at issue represented compensation for Baker's unauthorized withholding of payment to Hoxie, *i.e.* compensation for the detention of money. And, being of such ilk, we must also conclude that it fell within the ambit of §§301.002(a)(4) and 305.001(a) of the Finance code. There is no other reasonable interpretation of the demand.[3]

Finally, it is undisputed that neither Hoxie nor Baker agreed to pay interest at any particular rate. Thus, the maximum which Hoxie could levy upon Baker for detaining payment was six percent per annum. TEX. FIN. CODE ANN. §302.002. Similarly clear is the

---

[3]Hoxie also contends that the petition itself could not be the basis for a usury claim given the holding in *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d 603 (Tex. 1992). There, the Supreme Court declared that initiating suit via a pleading which demands excessive interest does not constitute usury. *Id.* at 605. This is so because the pleading is addressed to the court and not a demand to the opposing party. *Id.* While this may be true, we do not have a situation wherein Hoxie simply filed a petition with the court. Rather, it attached a copy of same to a demand letter and expressly directed Baker to "read the allegations . . . in the petition carefully." In attaching it to the demand letter and directing Baker to read it, the petition became part of Hoxie's demand. Indeed, the facts before us are akin to those in *Moore v. Sabine Nat'l Bank*, 527 S.W.2d 209 (Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.) wherein the creditor attached a copy of the petition to its notice of intent to repossess. In so attaching the petition, the creditor did more than simply inform the court of its claims; rather, the document constituted a part of the demand upon the debtor. More importantly, in discussing *Sabine* in *George A. Fuller*, the Supreme Court distinguished it from the *Fuller* facts because the petition had been attached to the notice of intent to repossess. So, because the Supreme Court did not overrule *Sabine*, it remains authoritative precedent.

10

fact that Hoxie demanded 18% per annum through the January 15th letter and attachment. Thus, because the 18% demanded was three times more than allowed by statute, the levy was usurious.

In sum, the January 15th letter and attachment are not susceptible to reasonable but different interpretations. Only one construction can be afforded it, and that construction reveals an intent to charge Baker interest at 18% per annum for detaining payment of the monies allegedly due Hoxie under the contract to purchase the combines. Having established that the demand was usurious as a matter of law, Baker was entitled to the instructed verdict. Thus, we find no error in the trial court granting it.

### 2. Account Receivable

Regarding the account receivable, Hoxie posits, in effect, that Baker failed to prove that the dealer communicated any interest charge to him. And, without such a communication, according to Hoxie, there can be no usury. We agree.

As previously mentioned, to come within the ambit of §305.001(a) of the Finance Code, one must charge an excessive rate of interest. Furthermore, before the rate is deemed charged it must be communicated to the debtor. *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d at 605.[4]  According to the record before us, Hoxie's practice included automatically levying an interest charge of 18% per annum on tardy accounts

[4]In holding that the charge must be communicated to the debtor, the Supreme Court was not speaking of a matter irrelevant to the disposition of the case, as suggested by Baker. Before the court was "the question of whether a pleading containing a claim for usurious interest is a document which may charge interest for purposes of imposing usury penalties." *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d 603, 603 (Tex. 1992). In answering that question, the court endeavored to define what constituted a charge of interest. And, in arriving at that answer, it concluded that one of the components of a charge involved the communication of the interest rate to the debtor, and that merely filing a petition with the court did not constitute such a communication. *Id.* at 605. So, the discussion regarding the need to communicate the charge was not *dicta*.

11

receivable. However, when asked if he paid any interest charges on the account receivable allegedly due Hoxie, Baker replied: "No I didn't." He then explained that he did not do so because he 1) "was never billed for it" and 2) received no statement from Hoxie showing such charges. Given Baker's testimony, the trial court could not find, as a matter of law, that Hoxie communicated the charge to Baker. And, because it could not so find, it was also barred from concluding that Baker established the elements of usury *vis-a-vis* the account receivable.[5]

Furthermore, we reject, for several reasons, Baker's argument that when someone merely testifies at trial about a creditor's accounting practices the testimony *ipso facto* constitutes a charge of interest. First, the testimony referred to by Baker entailed Hoxie's president simply describing for the fact-finder how the company's computer automatically calculated interest due on outstanding accounts. Yet, at no time did that individual, or anyone else, inform the court at trial that Hoxie wanted interest at 18% per annum as part of any judgment in its favor. Again, the intent to levy a particular rate upon a particular debt must be "express and positive" before it can be said that the creditor violated the usury laws. *Parhms v. B & B Ventures, Inc.*, 938 S.W.2d at 203. So too must the demand for the interest be communicated to the debtor. *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d at 605. Merely describing for the fact-finder a creditor's internal accounting practices (without more and in the face of the debtor's own testimony that it never received

---

[5]Our conclusion also negates Baker's proposition that Hoxie violated the usury laws by charging interest at a time when interest could not be charged. Simply put, if no interest charge on the account receivable was ever communicated to Baker, it can hardly be said that Hoxie charged Baker interest at a time when it could not.

12

an invoice containing an interest charge) is not the express and positive demand for usurious interest required under *Parhms* and *Fuller*.

Secondly, like pleadings, testimony given at trial is directed to one other than the opposing party. It is presented to the fact-finder, whether it be a judge or jury, to be used to assess the validity of a claim or defense. So, if the Supreme Court is correct in holding that a request for interest in a pleading is not a charge for purposes of the usury laws since the pleading is directed to someone other than the debtor, *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d at 605, then it logically follows that testimony given at trial cannot constitute a charge either. Again, this is so because that testimony, like the pleading, is directed to someone other than the debtor.

In sum, Baker failed to establish, as a matter of law, that Hoxie charged him an usurious rate of interest on the outstanding account receivable. Therefore, granting him an instructed verdict on that aspect of his usury claim was improper.

### *Issue Two*

Hoxie next contends that it proved, as a matter of law, that Baker owed it the sum reflected in the account receivable. Additionally, the trial court's failure to award it that sum of money allegedly constituted error. We agree.

13

The evidence of record indisputably illustrates that Baker incurred a debt to Hoxie in the amount of $3137.70. So too does it establish, as a matter of law, that the debt was unpaid at time of suit and trial.[6]

Furthermore, we reject Baker's suggestion that Hoxie's failure to request that the issue be submitted to the jury barred and bars recovery. This is so because one need not request a jury issue on claims established as a matter of law. *Gray v. West*, 608 S.W.2d 771, 778 (Tex. Civ. App.–Amarillo 1980, writ ref'd n.r.e.). And, as illustrated above, Hoxie established his right to recovery upon the open account as a matter of law.

Nor do we accept Baker's proposition that the claim was barred because Hoxie demanded an usurious rate of interest. This is so because, as previously discussed, the transaction did not involve usury.

Having proven, as a matter of law, its entitlement to recovery upon the account receivable, judgment should have been entered in favor of Hoxie on that claim. Because it was not, the trial court erred.

### Issue Four – Attorney's Fees

Finally, Hoxie contends that the trial court erred in awarding Baker attorney's fees. Its argument is two-fold. First, it complains that no statute authorized the award and

---

[6]Baker posits that the debt was not outstanding at the time of trial because he had paid the obligation. The alleged payment came in the form of a cashier's check in the amount of $3137.70 from Baker to Hoxie. That Baker delivered the instrument to Hoxie is alone inconsequential for the mere tender of an instrument does not constitute payment of the underlying debt. *In re Jones*, 978 S.W.2d 648, 654 n.4 (Tex. App.–Amarillo 1998, orig. proceeding); *Fillion v. David Silvers Co.,* 709 S.W.2d 240, 246-47 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Home Ins. Indem. Co. v. Gutierrez*, 409 S.W.2d 450, 456 (Tex. Civ. App.–Corpus Christi 1966, writ ref'd. n.r.e.). Rather, the parties must agree that it is payment before it can be deemed such. *Fillion v. David Silvers Co.,* 709 S.W.2d at 246; *Home Ins. Indem. Co. v. Gutierrez*, 409 S.W.2d at 456. Furthermore, nothing of record suggests that Hoxie agreed to accept, either expressly or impliedly, the check as payment. Indeed, the company did not deposit or otherwise cash the instrument or otherwise "appl[y] it on the debt." So, it is unquestionable that the debt remained outstanding at time of trial.

14

second, that Baker failed to segregate, via a jury issue, those attorney's fees subject to recovery from those which were not. We overrule each aspect of the contention.

### 1. Statutory Basis for Attorney's Fees

Through his counterclaim, Baker pled causes of action sounding in usury and declaratory judgment. Regarding the former, statute declares that a "person who is liable under Section 305.001 or 305.002 [of the Finance Code] is also liable for reasonable attorney's fees set by the court." TEX. FIN. CODE ANN. §305.003. Since Baker pled for attorney's fees via his counterclaim and Hoxie was found liable under §305.001 of the Finance Code, Baker was entitled to recover such fees from Hoxie.[7]

Regarding the cause seeking declaratory relief, statute again permits the award of "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. §37.009 (Vernon 1997). Moreover, Baker was not the sole litigant invoking the Uniform Declaratory Judgments Act. Hoxie did so as well. Under these circumstances, the trial court was entitled to award fees to which ever litigant prevailed, such as Baker. *See First City Nat'l Bank v. Concord Oil Co.,* 808 S.W.2d 133, 138-39 (Tex. App.--El Paso 1991, no writ) (holding that when either the plaintiff or plaintiff and defendant seek declaratory relief, attorney's fees may be awarded to either party); *Ritchie v. City of Fort Worth,* 730 S.W.2d 448, 451 (Tex. App.--Fort Worth, writ ref'd n.r.e.) (holding the same); *First Nat'l Bank v. John E. Mitchell Co.,* 727 S.W.2d 360, 363 (Tex.

---

[7]Hoxie initially argues that Baker failed to pray for attorney's fees in his live pleading. However, perusal of his Second Amended Original Answer and Counterclaim discloses otherwise. Therein, he not only mentioned his right to recover such fees specifically under §37.009 of the Texas Civil Practice and Remedies Code but also included a general prayer for same. Furthermore, nothing of record suggests that Hoxie specially excepted to the averments. Given this, we conclude the allegations were sufficient to place Hoxie on notice of its potential liability for attorney's fees and to preserve the claim for fees.

App.–Amarillo 1987, writ ref'd n.r.e.) (stating that when the plaintiff seeks declaratory relief, the trial judge may award attorney's fees to any party). [8]

## 2. Segregation of Fees

As to the contention that Baker failed to segregate, via a jury issue, those attorney's fees subject to recovery from those which were not, we conclude that the issue was waived. Generally, the failure to segregate attorney's fees in a case containing multiple causes of action, when only some of which entitle the recovery of fees, can result in the recovery of no fees. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1996). Yet, if no one objects to the situation, then the objection is waived. *Id.*

Below, Hoxie objected to the issue involving attorney's fees "because [the court] didn't segregate or put in there which amount of attorneys fees was for usury or which amount . . . was for *declaratory judgment*." (Emphasis added). In effect, complaint was made regarding the segregation of fees incurred in prosecuting the usury claim (which fees were authorized by statute) from fees incurred in prosecuting the declaratory action (which fees were authorized by statute). Nothing was said, however, about fees "applicable to [the] *defense* against Hoxie's claims and the fees applicable to Baker's usury claim." (Emphasis added). In other words, no one complained about the segregation of fees recoverable under statute from those generally incurred by Baker in defending against the suit and which allegedly are not recoverable. And, it is the latter complaint that is urged on appeal. So, given that the contention before us does not comport with the objection

---

[8]Incidentally, Hoxie does not contend that its request for declaratory relief was baseless. It would seem as though such an argument is a prerequisite to contending that *Concord Oil*, *Ritchie*, and *John E. Mitchell* did not apply.

16

raised below, that before us was and is waived. *Rodriquez v. State,* 955 S.W.2d 171, 177 (Tex. App. – Amarillo 1997, no pet.) (stating that the issue asserted on appeal must comport with the objection asserted below, otherwise it is waived).

For the reasons stated above, we reverse those portions of the judgment 1) awarding damages against Hoxie for allegedly charging Baker usurious interest upon the account receivable and 2) denying Hoxie recovery upon the account receivable due from Baker. We further order that Hoxie recover from Baker the sum of $3137.70 plus interest at the rate of 1) six percent a year from thirty days after the account receivable became due to the day before judgment and 2) ten percent a year from the date of judgment until paid. However, we are unable to render judgment on the entire cause for two reasons. First, the date on which the account receivable became due cannot be determined from the record before us. Second, the record also fails to illustrate what portion of the $251,884.95 awarded to Baker as damages for usury is comprised of the damages attributable to Hoxie's alleged charge of usury on the account receivable. Thus, we remand the cause to the trial court for further proceedings commensurate with this opinion.

Brian Quinn
Justice

Publish.