NO. 07-06-0119-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 13, 2006
_____

BLAKE STRINGER, BACC FARMS, LTD., and
ROCKIN' LAZY S, INC.,

                                                            Appellants

v.

RED RIVER COMMODITIES, INC., and
CARROLL MICHAEL WILLIAMS,

                                                            Appellees
_____

FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;

NO.  04-11; HON. ROLAND D. SAUL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants Blake Stringer, BACC Farms, Ltd., and Rockin' Lazy S, Inc. (collectively referred to as Stringer) appeal from a judgment denying them recovery against Red River Commodities, Inc. and Carroll Michael Williams (collectively referred to as Red River). Their two complaints involve the trial court's refusal to admit into evidence a purported

government record labeled Plaintiffs' Exhibit 333 (P333) and the expert  testimony of Dr. Peter Bernhardt.  We affirm the judgment.

*Background*

The dispute concerns failed sunflower crops planted by Stringer in the years 2002 and 2003.  The seed for the crops was acquired from Red River, and, Stringer believed them to be defective given their purported inability to produce as represented by the business.  Thus, Stringer sued Red River to recover damages.  Red River defended against the suit by, among other things, attempting to illustrate that events or acts other than the quality of its seed caused the low crop yields experienced by Stringer.

*P333*

Stringer initially contends that the trial court erred in excluding his exhibit P333 from evidence.  The document purported to be a government record issued by the United States Department of Agriculture Risk Management Agency.  Through it, the agency found that a potential crop planted with the type of seed utilized by Stringer in 2002 was uninsurable. Red River objected to its admission on the grounds of hearsay and relevance.  Stringer sought to refute those grounds by asserting that the exhibit 1) was "excluded from the hearsay rule because it's a document required by a governmental agency," 2) showed "insurance was denied in 2002 because the crop was uninsurable," and 3) was "relevant among other things to the mental anguish of the Plaintiff."[1]  The trial court sustained Red River's objection, though it did not specify any particular ground for doing so.

---

[1]What the "other things" were went unmentioned.

2

Whether the trial court erred in sustaining the objection depends upon whether it abused its discretion. *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). Moreover, we must uphold the evidentiary ruling if there is any legitimate basis upon which to do so, *id.*, and the burden lies with appellant to show that there were no grounds supporting the decision. *See Minnesota Min. & Mfg. Co. v. Nishika, Ltd.,* 885 S.W.2d 603, 630 (Tex. App.–Beaumont 1994), *rev'd on other grounds,* 953 S.W.2d 733 (Tex. 1997) (stating that "3M . . . had to bear the burden of showing that there was no ground upon which the trial court could have properly excluded the hearsay evidence").

Given that at least two grounds were mentioned as basis for excluding P333, the burden lay with Stringer to show us why neither justified the trial court's decision. And, as to hearsay, he simply wrote in footnote three of his brief that: "P333 is excluded from the hearsay rule. *See* TEX. R. EVID. 803(8); *Nissan Motor Co.*, 145 S.W.3d at 141." Nothing more was said. So, to the extent both Rule 803(8) and *Nissan* mention that governmental records may be excluded from the hearsay rule, Stringer did not explain why P333 should fall within that exclusion. Nor did he explain within what category of Rule 803(8) the document fell. This is of import since three exist and two of them mandate that the report encompass 1) matters observed per duty imposed by law or 2) factual findings deriving from an investigation made pursuant to authority granted by law.[2] Whether P333 met the requirements of either category went unmentioned, as did whether the document came

---

[2]The rule states that reports, records, and the like of public offices or agencies are excluded from the hearsay rule if they set forth 1) the activities of the agency or office, 2) matters observed pursuant to duty imposed by law as to which there was a duty to report, or 3) factual findings resulting from an investigation made pursuant to authority granted by law. TEX. R. EVID. 803(8).

3

within the parameters of the third category (*i.e.* records setting forth the activities of the issuing agency).

As stated in *State v. Foltin*, 930 S.W.2d 270 (Tex. App.–Houston [14th Dist.] 1996, writ denied), "[o]nce a document has been authenticated, Rule 803(8) does not require a formal predicate to be laid through a witness, but the offered document must be shown to satisfy the requirements of the rule." *Id.* at 272. Stringer cites us to no evidence (and we found none) authenticating P333 and thereby relieving himself of having to prove the item satisfied Rule 803(8). Nor have we uncovered testimony purporting to illustrate that the document met the requirements of that rule. Thus, he did not carry his burden to prove that the trial court erred in excluding it on the basis of hearsay.

As for the matter of relevance, we reiterate that Stringer claimed the document was "relevant . . . to the mental anguish of the Plaintiff." Yet, that particular ground goes unmentioned on appeal. Rather, he avers here that the trial court should have admitted the record since it was relevant to the issue of causation. Given that the ground uttered here differed from that mentioned below, nothing was preserved for our review. *Hoxie Implement Co., Inc. v. Baker,* 65 S.W.3d 140, 151 (Tex. App.–Amarillo 2001, pet. denied).

Finally, even if the trial court erred in excluding the item, it remained Stringer's burden to establish harm. Doing so obligated him to demonstrate "that the whole case depended upon the evidence that was excluded." *Minnesota Min. & Mfg. Co. v. Nishika Ltd.*, 885 S.W.2d at 630. Stringer endeavored to illustrate the potential relevance of P333. He also opined that exclusion of the document "probably resulted in an improper judgment."

4

But, given the tenor of the entire record, we cannot say that Stringer's whole case depended upon admission of P333.

In sum, Stringer did not establish that the trial court abused its discretion in excluding P333. So, we overrule the contention.

*Expert Testimony*

Next we address the expert testimony excluded by the trial court. It consisted of comments by Dr. Peter Bernhardt of an experiment conducted after various of Stringer's crops allegedly failed. The experiment allegedly consisted of his planting various types of sunflower seeds, including those of the kind Stringer planted. Bags were placed over the flowers of some of the maturing plants while the flowers of others were left uncovered. Through this, he hoped to determine the self-pollination rate of the seed used by Stringer. Red River moved to strike the testimony, which motion the trial court granted on the basis that Bernhardt "did not conduct a valid scientific experiment." We overrule the issue.

As already stated, we may uphold the trial court's decision on any legitimate ground. *Owens-Corning Fiberglas Corp. v. Malone*, *supra*. Next, when questioned, Bernhardt revealed that he did not know the weather conditions (*i.e.* rainfall, humidity, and wind) that prevailed during his experiment. Nor did he plant the seeds himself or know the amount of irrigation provided in the experiment, the fertility of the soil before the seeds were planted, or the fertilizer requirements for sunflowers. This is of import because he also opined that climatic conditions, insufficient water, "insufficient timing of water," humidity, and fertilizer could impact the plants' growth and production of acceptable seed.

When asked about soil moisture at the time of planting, Bernhardt also stated that he checked it by "eyeballing it," a method he then agreed was not reliable for a plant

5

physiologist. So too did he admit that he could not provide a specific rate of error related to his experiment, he had never been involved in raising sunflowers or in their breeding or fertilization prior to being hired by Stringer's attorney to conduct the experiment, and he was not an expert on sunflowers. Nor did he know if the seeds used in the experiment were of the type or breed represented because they were given him by Stringer or his attorney. This too is of import because he later indicated that hybrid seed similarly labeled could produce differently if they came from different "parents" or "heads."

Before purportedly expert testimony is admitted, it must be shown not only that the expert is qualified but also that his opinions are relevant and have a reliable foundation. *E. I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). To be qualified, the expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court. *Broders v. Heise*, 924 S.W.2d 148, 153-54 (Tex. 1996); *see Helena Chemical Co. v. Wilkins*, 18 S.W.3d 744, 752-53 (Tex. App.–San Antonio 2000), *aff'd,* 47 S.W.3d 486 (Tex. 2001) (stating that the focus is on whether the expert's expertise goes to the very matter on which he is to give an opinion). The very matter about which Bernhardt was to opine encompassed the self-pollination of sunflowers. Because he admitted to lacking expertise on sunflowers and to never before having been involved with their raising or breeding, the trial court could have rationally inferred that he lacked the experience and training in that field and, thus, was not qualified in the matter.

Or, the trial court could have concluded that the reliability of his experiment was suspect. Again, Bernhardt did not personally know if any of the particular sunflower seeds planted were of the same type involved in the underlying suit; instead, he had to rely on the representations of Stringer and his attorney. Nor was he aware of the climatic or soil

6

conditions involved in his experiment even though they could affect the results. Reason suggests that one attempting to determine the productivity of seed would know of and regulate the many indicia that may affect that productivity. Bernhardt did not *viz* his experiment.

In sum, we cannot say that the trial court abused its discretion in excluding the purportedly expert testimony at issue. The issue is overruled.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice