

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-326-CV

RALPH PLEMONS, M.D.                                          APPELLANT

V.

PATRICIA HARRIS, INDIVIDUALLY                                APPELLEE
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF HARVEY
HARRIS, DECEASED

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In one issue, Appellant Ralph Plemons, M.D. asserts that the trial court

abused its discretion by overruling his objections to Appellee Patricia Harris's

---

[1] *See* Tex. R. App. P. 47.4.

chapter 74 expert report and also by denying Dr. Plemons's motion to dismiss. We affirm.

## II. Factual and Procedural History

On September 7, 2005, after performing an EKG on Harvey Harris, Dr. Tracye Orr referred Harvey to a surgeon for repair of an umbilical hernia. On October 21, 2005, Dr. Augustus Lyons, along with the anesthesiologist Dr. Plemons, performed the surgery. Approximately twenty-four hours after the surgery, Harvey returned to the hospital with chest pains. He died the following day from an apparent myocardial infarction, a.k.a. "heart attack."

Harris, Harvey's surviving spouse, filed this suit on December 17, 2007, alleging that Dr. Plemons failed to utilize appropriate anesthesia given Harvey's health. Pursuant to chapter 74 of the civil practice and remedies code, Harris served a timely expert report from Dr. Joseph A. Stirt, an anesthesiologist from Charlottesville, Virginia. He opined that Dr. Plemons breached the standard of care by not obtaining a preoperative EKG within thirty days of a planned surgical procedure as required for any patient over sixty years old who was to receive general anesthesia. Dr. Stirt further stated that the deviations from the standard of care represented negligence, which proximately caused Harvey's death.

On April 29, 2008, Dr. Plemons filed objections to Harris's expert report, and he amended those objections on May 6, 2008. Subsequently, the trial court overruled Dr. Plemons's objections, and this interlocutory appeal followed.

### III. Preservation of Error

**A. Review**

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The objecting party must get a ruling from the trial court. This ruling can be either express or implied. *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied). If trial judge refuses to rule, an objection to the refusal to rule is sufficient to preserve error. Tex. R. App. P. 33.1(a)(2). Further, the complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). An appellate court cannot reverse based on a complaint not raised in the trial court. *Id.*

**B. Analysis**

In "Defendant Ralph Plemons, M.D.'s Amended Objections to Plaintiff's Chapter 74 Expert Report and Motion to Dismiss," Plemons asked the court to dismiss Harris's suit due to the inadequacy of Dr. Stirt's report as follows:

> In his report Dr. Stirt suggests "one standard of care was breached by Dr. Ralph Plemons". Dr. Stirt goes on to state, "a pre-operative EKG obtained within 30 days of a planned surgical procedure is required prior to general anesthesia for any patient over 60 years old. No EKG was performed on Mr. Harris and subsequently examined as required by Dr. Plemons." See attached report of Dr. Stirt as Exhibit 2.
>
> Dr. Stirt's sole criticism of Dr. Plemons was that no EKG was performed on Mr. Harris prior to the surgery and subsequently examined as required by Dr. Plemons. *This sole criticism is entirely factually inaccurate.* See attached as Exhibit 3, EKG dated September 7, 2005 performed and received prior to the procedure at issue. *As such, this report is conclusory* and does not represent a good faith effort to fulfill the statute as well as case law interpreting same. . . . *The report of Dr. Stirt is conclusory and based upon assumptions which are not supported by the facts* with respect to standard of care, breach and causation and accordingly fails to meet the requisites of Chapter 74 as well as case law interpreting same. [Emphasis added.]

On appeal, Plemons argues thusly:

> It is significant to note that on the first page of Dr. Stirt's report, he states that he had reviewed the records from Dr. Tracye Orr from September 7, 2005, through October 19, 2005. It is undisputed that Dr. Orr performed an EKG on Mr. Harris on September 7, 2005. After Dr. Orr obtained this EKG, he referred Mr. Harris for a surgical consult for the umbilical hernia, without requesting or seeking any type of further cardiac evaluation or follow-up.

4

Since Dr. Stirt reviewed Dr. Orr's records, he would have had access to the EKG performed on September 7, 2005, yet *conspicuously missing from his report is any mention or reference to any abnormalities in the September 7 EKG that would have caused the surgery to be cancelled;* moreover, *he does not identify, describe, or explain why an EKG done 14 days later* (i.e., 30 days before surgery) *would have been different or demonstrated some type of abnormality that would have resulted in the surgery being cancelled.* To the contrary, Dr. Stirt only speculates that a pre-operative EKG "could well have shown marked cardiac abnormality . . ." *Dr. Stirt is obviously speculating on what a second EKG could have shown; how it might have changed from the one obtained on September 7;* whether it would have resulted in further cardiac follow-up; *and whether it would have resulted in a deferral of the surgery. Dr. Stirt's attempts at causation are conclusory* and would require an inference on causation which, under the "four corners rule," a court is not permitted to do. [Emphasis supplied; internal citations omitted.]

A plain reading of Dr. Plemons's argument to the trial court is that there was the a factual inaccuracy in Dr. Stirt's report, which Dr. Plemons asserted caused the report to be conclusory in nature. This is plainly demonstrated when he states that, referring to Dr. Stirt's criticism that no presurgery EKG was performed on Harvey, "[t]his sole criticism is entirely inaccurate . . . [a]s such, this report is conclusory."

In contrast, on appeal, Dr. Plemons acknowledges that he is not arguing factual inaccuracy. Rather, a plain reading of Dr. Plemons's argument on appeal is that because there was an EKG performed forty-four days before the surgery, Dr. Stirt's report failed to show how a second EKG performed thirty

days or less before the surgery would have resulted in a different surgical outcome. Specifically, he argues that Dr. Stirt's report only speculated that a pre-operative EKG "could well have shown marked cardiac abnormalities" and speculated "whether it would have resulted in the deferral of the surgery. Dr. Stirt's attempts at causation are conclusory and would require an inference on causation . . . ."

During oral argument to this court, counsel for Dr. Plemons attempted to explain the lack of congruity between the arguments at trial and on appeal by asserting that he only needed to urge that Dr. Stirt's report was conclusory without any explanation to the trial court of where, when, how, or why, and that he had in his summation at the end of his amended motion stated that the report was conclusory *and* factually unsupported, thereby disconnecting the two thoughts. We observe that the only explanation given to the trial court of how the report was conclusory was that it was factually inaccurate, as previously discussed. We decline to hold that trial judges are required to adopt the methods of Sherlock Holmes and divine without written or oral guidance as to where, when, why, and how an expert's report is conclusory. We therefore hold that the complaint to the trial court does not comport with the complaint on appeal and as such is not preserved for our review. *See Banda*, 955 S.W.2d at 272; *see also Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex.

6

App.—Houston [14th Dist.] 2005, pet. denied) ("To have preserved error, a party's argument on appeal must comport with its argument in the trial court."), *cert. denied*, 549 U.S. 1052 (2006); *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140, 151 (Tex. App.—Amarillo 2001, pet. denied) ("[G]iven that the contention before us does not comport with the objection raised below, that before us was and is waived.").

### IV. Conclusion

Having found that Dr. Plemons's complaint on appeal has not been preserved, we overrule his sole issue on appeal and affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL: LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

LIVINGSTON, J. concurs without opinion.

DELIVERED: January 8, 2009