Henry T. FILLION, et al., Appellants,

v.

The DAVID SILVERS COMPANY, et al., Appellees.

No. A14–85–510–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 20, 1986.

Rehearing Denied March 20, 1986.

Sidney Farr, Houston, for appellants.

Scott Carpenter, B. Edward Williamson, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and PAUL PRESSLER and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellants, Henry T. Fillion, also known as Tom Fillion, in his capacity as Trustee and Substitute trustee under the deed of trust, appeal from a final judgment rendered against them in favor of appellees: The David Silvers Company, Inc. and David Silvers, individually and as Trustee for the Shareholders of the David Silvers Company, Inc. and Iris Silvers. The final judgment included the partial summary judgment rendered in favor of appellees that was carried forward and incorporated into the final judgment. We reverse.

The court granted partial summary judgment at a hearing held on July 9, 1984, the judgment was signed on August 23, 1984. In its judgment the court set aside and held for naught the trustee's deed from Tom Fillion, substitute trustee, to H.T. Fillion, trustee, and any other deeds, contracts or indicia of ownership, transfer or sale of the property, commonly known as 2347 University Boulevard, Houston, Texas. Further the court ordered the foreclosure sale, by which the property was conveyed, be set aside and held for naught and that appellees be entitled to recover title to the property.

On October 2, 1984 a jury trial commenced to decide money damages owed appellees for the fair rental value of the property during the period of time appellants occupied the property following the foreclosure sale and also reimbursement to appellants for monies they spent

during their occupancy, for taxes, insurance and repairs. The court signed this final judgment on March 26, 1985.

On May 23, 1974, appellees, David S. Silvers and wife, Iris Lee Silvers, executed a promissory note in the principal amount of $45,000 payable to Liberty Savings Association. To secure that note, the Silvers executed a deed of trust on the property in favor of L.A. Kucera, as trustee, for the benefit of Liberty Savings Association, holder of the $45,000 note.

In March 1978, a fire severely damaged the property. At the time of the fire the Silvers had a fire insurance policy on the property with a loss payable clause in favor of Liberty Savings Association, pursuant to the deed of trust, which included the following provision:

"And for the purpose of securing the payment of said note, principal, interest and attorney's fees, Grantors do further covenant with said Association and its assigns to pay the sums named in the said note with interest thereon as therein provided; to permit no waste, *to keep all improvements in good repair, and to do and permit to be done to said premises nothing that may in any way impair or weaken the the security under this instrument; to keep the buildings* now or hereafter to be erected on said premises, *insured* against loss or damage by fire, windstorm, explosion and other hazard, casualties and contingencies, including war damage for not less than the amount of said note, if procurable to that extent, in companies acceptable, and with loss payable to said Association, according to such form as may be required; to deliver all policies of insurance to said Association and to pay before the same shall become delinquent, all taxes and assessments that may be levied within the State of Texas upon said premises or any part thereof; and it being understood that the legal holder of said note shall have the option to apply any proceeds of insurance either to the restoration of said premises or to the liquidation of the indebtedness hereby secured. And it is expressly and specifically agreed that if Grantors shall fail to effect such insurance and deliver such policies, or to pay such taxes, then said insurance may be effected or said taxes may be paid by the legal holder of said note, at the option of such holder, and sums expended for such purposes shall become part of the debt secured hereby, shall become immediately due and payable and shall draw interest at the rate of 10% per annum from date so expended until paid" (emphasis supplied).

Accordingly, on March 27, 1978, Liberty Savings Association wrote appellees a letter containing the following language:

"In order that you may plan accordingly we advise you that the Association has decided to exercise its option as expressed in the Deed of Trust to require full payment of the loan from the proceeds of the insurance loss payment."

After waiting over six months without receipt of any payment from the fire insurance proceeds, as requested in its March 27, 1978 letter, Liberty Savings finally wrote to the fire insurance company, General Accident, on October 5, 1978. In summary, Liberty Savings related to the insurance company that they were aware that the property in question had been partially damaged by fire and as a result was uninsurable. Furthermore, due to the excessive delay since the fire, Liberty Savings, as mortgagee would make demand upon the insurance company for proceeds due under the policy. According to affidavit proof in appellants' response to appellees' motion for partial summary judgment, Liberty Savings sent a copy of this letter to appellees.

After having received no payment from General Accident Insurance Company for the requested balance due on the note, on November 20, 1978, Liberty Savings sold the note and its companion deed of trust to Steven Schoppe, trustee. Kucera subsequently resigned as trustee on December 1, 1978.

Liberty Savings sold the note to Schoppe, trustee, who bought the note at the request of Henry T. Fillion, appellant and trustee, with funds supplied by Hazel Rich, for whom Fillion was acting as trustee. Believing that the Liberty Savings letters of March and October of 1978 constituted notice to the Silvers that Liberty Savings intended to accelerate the note because the old insurance had lapsed after March 5, 1978, and because the property in its unrepaired state was uninsurable, appellant felt secure in buying the note for Hazel Rich on the premise that if the note was not paid in full from the insurance proceeds, appellants could easily protect her by accelerating the note.

Before accelerating the note on November 29, 1978, Fillion asked David Silvers, appellee, to sign and file a proof of loss statement with his insurance company, General Accident, so that the insurance company could pay the insurance proceeds from the fire loss to Schoppe, trustee, who in turn could use those proceeds to repair the property. However, when Silvers said that he would not file a proof of loss statement, Fillion accelerated the note by his letter of November 29, 1978. That letter contained the following language:

"It has come to my attention that the improvement on the above-described real property have been substantially damaged by fire and that no action has been taken by you or Ms. Silvers to restore the improvements to the condition as existed immediately preceding the fire. As a direct result of the damage incurred the security provided for by the Deed of Trust, said security being the basis of the loan, has been drastically weakened. Your failure to act is in direct breach of the conditions and covenants set forth in the above mentioned Deed of Trust, wherein it recites

and for the purpose of securing the payment of said note principal, interest and attorney's fees, Grantors do further covenant with said Association and its assigns to pay the sums named in the said note, with interest thereon as therein provided; to permit no waste, to keep all improvements in good repair, and to do and permit to be done to said premises nothing that may in any way impair or weaken the security under this instrument; . . .

In view of your default in the performance of the obligations, covenants and agreements legally imposed by the terms of the note and Deed of Trust, I hereby declare the entire indebtedness due and payable and demand full payment within 10 days of date of this notice."

On November 30, 1978, Schoppe, trustee, as legal holder of the $45,000 deed of trust note, appointed appellant, Tom Fillion, as substitute trustee under the deed of trust in place of Kucera. By letter dated December 11, 1978, Fillion wrote appellee that he had posted notice of foreclosure on the deed of trust at three places in Harris County, Texas, that the date of the foreclosure was January 2, 1979, and that if appellee planned to either remedy his default under the deed of trust, or else pay the note balance, he should do so right away.

At the foreclosure sale on January 2, 1979, Tom Fillion, substitute trustee, sold the property to the highest bidder, H.T. Fillion, trustee, for $44,960.76.

The foregoing statement of the facts were taken from the Partial Summary Judgment evidence presented to the court at the July 9, 1984 hearing on appellees' motion for partial summary judgment.

Appellants allege five points of error on appeal: (1) the trial court erred in adjudicating that under the undisputed facts the foreclosure sale was void as a matter of law, for the appellants' failure to give notice of their intent to accelerate the note; (2) the trial court erred in cancelling the trustee's foreclosure deed and vesting title in appellees; (3) the trial court erred in cancelling the foreclosure sale and trustee's deed and vesting title to the property in appellees, because appellees have never made a valid tender of the balance owed to the appellants on the deed of trust note; (4) the trial court erred in approving appellee's

letter of credit as a valid tender of the balance due on the appellants' deed of trust note; (5) even if the trial court's judgment vesting title in the appellees is correct, the trial court's award of $59,054.42 to the appellants as the principal and interest due on the note is too small, and the judgment should be reformed to award the correct amount.

Appellees allege the following crosspoint. The trial court erred in denying appellees' first motion for partial summary judgment and not in cancelling the trustee's deed and foreclosure because no genuine issue of any material fact existed with respect to the issue of whether the substitute trustee's notice of sale was insufficient to give the general public notice of the trustee's sale conducted January 2, 1979.

Appellants allege in their first two points of error that the trial court erred: (1) by adjudicating that based upon the undisputed facts, the foreclosure sale was void as a matter of law due to appellants' failure to give notice of their intent to accelerate the note and (2) by cancelling the trustee's foreclosure deed and vesting title in appellees.

■ In the instant case, appellants filed three responses to appellees' motion for summary judgment. Two of appellants' responses cannot be considered due to untimely filing.

The Texas Rules of Civil Procedure, Rule 166–A(c) states in pertinent part:

The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions, affidavits, stipulations of the parties and authenticated or certified public records, if any on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal....

The hearing on the motion for partial summary judgment was held on July 9, 1984 and the judgment was signed by the court on August 23, 1984. Appellants filed their first response to the motion on June 16, 1984. Appellants' response was timely according to Rule 166–A, *supra*, which requires any opposing affidavits or other written response to be filed not later than seven days prior to the day of the hearing, without leave of court. However, appellants filed a supplemental response on July 6, 1984 and a second supplemental response on August 20, 1984, without leave of court. Consequently, these latter two responses by appellants are not before this court as grounds for reversal. Rule 166–A(c), *supra*.

The trial court's rationale for partial summary judgment was that the trustee's deed at the 1979 foreclosure sale was void, because Fillion's conduct as substitute trustee under the deed of trust "did not meet the standard as set out in *Ogden v. Gibraltar Savings Ass'n.*, 640 S.W.2d 232 (Tex.1982) ... on the issue of notice of intent to accelerate and opportunity to cure...."

"Where the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands notice be given of the intent to exercise the option ... Thus, in the absence of a waiver, the holder of a delinquent installment note must present the note and demand payment of past due

installments prior to exercising his right to accelerate." *Ogden, supra,* at 233.

The *Ogden* decision was construed in *Cortez v. Brownsville National Bank,* 664 S.W.2d 805 (Tex.Civ.App.—Corpus Christi 1984, no writ). *Cortez* involved a suit to set aside a trustee's deed because the holder of the note failed to give the maker of the note notice that if the maker did not pay the delinquent installments the holder would accelerate the note and foreclose the deed of trust.

The pertinent parts of the note read:

"It is expressly provided that upon default in the punctual payment of this note or any part thereof, principal or interest, as the same shall become due and payable, the entire indebtedness secured by the hereinafter mentioned lien shall be matured, *at the option of the holder* ...

"Each Maker, Surety and Endorser waives Notice, Presentment for Payment, Demand for Payment and Acceleration of Maturity, and Protest..." (emphasis supplied). *Id.* at 808.

The deed of trust provided:

"Should the parties of the first part make default in the punctual payment of said indebtedness or any part thereof, principal or interest, as the same shall become due and payable, ... then and in any such case, the whole amount of said indebtedness hereby secured remaining unpaid, shall at the option of the party of the second part, or the holder thereof ..." (emphasis supplied). *Id.*

In upholding the validity of the foreclosure sale, the Court held:

"For a foreclosure under a deed of trust to be upheld, *absent a contrary agreement, waiver, or exceptional circumstances,* two types of notices must be given by the noteholder to the maker of the note. They are (1) notice of intent to accelerate prior to exercising the option to accelerate in order to provide the debtor with an opportunity to cure his default prior to foreclosure, and thereby avoid the harsh consequences of foreclosure; and (2) notice of acceleration. *Ogden v.*

*Gibraltar Savings Associations,* 640 S.W.2d 232, 233–234 (Tex.1982); *Allen Sales & Servicenter, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex.1975); *Faulk v. Futch,* 147 Tex. 253, 214 S.W.2d 614 (1948)." *Id.* at 809. (emphasis the court's)

[The *Ogden* case] is distinguishable from the instant case on the facts. In *Ogden,* the note did not contain a provision which *waived* notice of intent to accelerate the maturity of the note; here, there is such a waiver. The Supreme Court in both *Ogden* and *Allen Sales & Servicenter, Inc. supra,* has held that notice of intent to accelerate is not required where the note contains a provision which waives such action."

In this case, even though the issue that appellees may have waived notice of intention to accelerate is not before us, there is still a fact issue as to whether or not such notice was given. The reason the issue of waiver of intent to accelerate by appellees is not before us is because appellants raised this defense, for the first time, in their second supplemental response filed on August 20, 1984. This response was filed without permission of the Court and was not properly before or considered by the Court and can not be considered by this court on appeal as grounds for reversal.

In appellants' original response to appellees' motion for summary judgment, appellants allege that there are genuine issues of material fact regarding the issue of whether appellants gave appellees notice of intent to accelerate the note. Appellants cite the letter dated March 27, 1978, sent by Liberty Savings Association to appellees and the subsequent letter dated October 5, 1978, from Liberty Savings to General Accident, the fire insurance carrier on the building in question. A copy of the October 5, 1978 letter was sent to appellees.

As discussed earlier in this opinion, these letters contained information adequately notifying both appellees and General Accident of Liberty Savings Association's intention to accelerate the note. Evidence of these letters was contained in an affidavit

by L.A. Kucera and the affidavit was attached to appellants' first response to appellees' motion for summary judgment. The notice of intent to accelerate as contained in these two letters was communicated as early as March of 1978.

In addition to the two letters, there is also attached to appellants' first response an affidavit by Fillion, in which there is evidence of a telephone conversation between Fillion and Mr. Silvers. The affidavit states that between November 20, 1978 and November 29, 1978, Fillion telephoned appellees to request that appellees cure the default by filing a proof of loss with the fire insurance company, in order that the insurance funds would be available to repair the property, however; appellee refused to file a proof of loss. Additionally, before the note was accelerated, appellees had approximately eight months to cure the default by either repairing the building, purchasing new insurance, or permitting payment of the fire insurance loss proceeds to Liberty Savings Association, the prior holder of the note.

█ A summary judgment will be upheld only if the movant has conclusively established that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *Davis v. Houston Independent School District*, 654 S.W.2d 818, 820 (Tex.Civ.App. —Houston [14th Dist.] 1983, no writ); Tex. R.Civ.P. 166–A. From the record before us, we find that there was a genuine issue of fact with regard to the question concerning notice of the intention to accelerate the note by appellants. Therefore, movants-appellees is not entitled to judgment as a matter of law. Accordingly, we sustain appellants' first and second points of error.

In light of our decision to reverse the partial summary judgment in this case, we find it unnecessary to discuss the other points of error. For guidance in case of a future retrial of this cause we will address appellants' third and fourth points of error.

In points of error three and four, appellants allege that the trial court erred: (3) in cancelling the foreclosure sale and trustee's deed and vesting title to the property in the appellees because the appellees have never made a valid tender of the balance owed to the appellants on the deed of trust note and (4) in approving the appellees' letter of credit as a valid tender of the balance due on appellants' deed of trust note. We agree.

█ Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale. *Willoughby v. Jones*, 151 Tex. 435, 251 S.W.2d 508 (1952).

It is apparent that a necessary prerequisite to the Silvers' recovery of title in this action is tender of whatever amount is owed on the note. The question is whether such a tender was made. The Silvers are not entitled to judgment for title to the house if such tender was not made.

One of the grounds on which Fillion objected to the letter of credit as purported tender of payment of all sums due under the note and deed of trust was that a legal tender cannot validly be made through the medium of a letter of credit.

█ "A *tender* is an unconditional offer *by a debtor* or obligor to pay another, in current coin of the realm, a sum on a specified debt or obligation." *Baucum v. Great American Insurance Co. of New York*, 370 S.W.2d 863 (Tex.1963). It consists of the actual production of funds and offer to pay the debt involved. "The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession." *Id.* at 866. *See also Home Insurance Indemnity Company v. Gutierrez*, 409 S.W.2d 450, (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). In the absence of an agreement to the contrary, tender of payment, when money is called for, is not valid when made by check. *Littlejohn v. Johnson*, 332 S.W.2d 439 (Tex.Civ.App.—Waco

1960, no writ). Tender by an express money order was not valid tender of a sum due by an insurance company to an insured for unearned premium. The tender must be made in money. *Niagara Fire Ins. Co. v. Mitchell,* 164 S.W. 919 (Tex.Civ.App.—San Antonio 1914, writ dism'd).

■ In the instant case, appellees issued a letter of credit as tender of payment. We find that this letter of credit does not represent an unconditional offer by the debtors-appellees to pay appellants in cash money and therefore is not valid tender.

In order to obtain any money under the letter of credit, Fillion was obligated to prepare and file an affidavit with the district clerk stating that the judgment had become final and that no further appeal had been or would be filed. Also he was obliged to prepare and present to the district clerk certified copies of court records showing that a final judgment in this case had in fact become final and is no longer appealable.

■ In addition, the letter of credit requires that the district clerk draw *drafts* on Mercury Savings Association in order to collect the $74,577.86. In the absence of an agreement, a check, bill of exchange, or draft does not of itself discharge or constitute payment of a debt nor does the preparation of such an instrument constitute legal tender. *Home Insurance Company, supra.* We find appellees' letter of credit was not valid tender. Accordingly, we sustain appellants' third and fourth points of error.

In the instant case, appellees presented a cross-point which we now address. Appellees allege in their cross-point that the trial court erred in denying their first motion for partial summary judgment on May 24, 1982 by not cancelling the trustee's deed and foreclosure for the reason that no genuine issue as to any material fact existed as to the issue of whether the substitute's notice of sale was insufficient to give the general public notice of the trustee's sale conducted on January 2, 1979.

Appellants posted a notice of foreclosure sale advertising the date of sale to be January 2, 1978. The sale actually occurred on January 2, 1979.

By the cross-point appellees invite us to reverse the trial court's order signed June 16, 1982, overruling their first motion for partial summary judgment. We must decline the invitation.

■ When the court denied appellees' first partial summary judgment motion it inferentially found one or more material disputed issues of fact which prevented the summary judgment then sought. *Turner v. County of Marion,* 549 S.W.2d 254 (Tex.Civ.App.—Texarkana 1977, writ dism'd). The court's order overruling the motion was an interlocutory one from which an appeal is not permitted. *Novak v. Stevens,* 596 S.W.2d 848 (Tex.1980). The fact that the court thereafter granted appellees' subsequent motion founded on a different theory and granted a partial summary judgment which is incorporated into the final judgment and which we reverse in this appeal does not require the appellate court to review the prior interlocutory order. *Garcia v. City of Lubbock,* 634 S.W.2d 776 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). We overrule appellees' cross-point.

Accordingly we reverse and remand the case for trial.