**Affirmed and Opinion filed November 17, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00298-CV

## GERALD JOSEPH BAUDER, Appellant

## V.

## SARA ALEGRIA, Appellee

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 13-CV-0940**

# O P I N I O N

A mortgagee appeals a judgment setting aside a foreclosure sale because the mortgage servicer failed to send notice to the debtor at the proper address. The debtor challenges by cross-appeal the trial court's failure to award attorney's fees under the Declaratory Judgments Act. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Sara Alegria[1] purchased property at 1825 Neuman Street in La Marque, Texas, in March 2010, from appellant/defendant Gerald Joseph Bauder[2] and Louisa Bauder. At the time of the purchase, Sara signed a promissory note.[3] Both Sara and her brother, Manuel Alegria,[4] signed a deed of trust that required them to pay property taxes and maintain certain types of insurance on the property. The deed of trust identified both Sara and Manuel as makers of the note.

At the time of the purchase, Sara listed her mailing address as 704 Roosevelt Street in La Marque, Texas. In May 2012, Gerald executed a power of attorney authorizing his son, Robert Bauder,[5] to act for Gerald, and Robert began collecting mortgage payments from Sara on Gerald's behalf. At times, Sara delivered the payments to Robert, and, at times, Robert collected the payments from Sara at the Neuman Street property. Twice, Robert collected the payment from Sara at 704 Roosevelt Street.

In May 2013, Robert's attorney, the trustee under the deed of trust, sent Sara and Manuel a notice to cure an alleged default under the deed of trust to the 704 Roosevelt Street address ("Notice to Cure"). The Notice to Cure stated that Sara and Manuel had failed to comply with the terms of the deed of trust that they pay all taxes and assessments on the property and maintain insurance, including flood

---

[1] We refer to Sara Alegria by her first name because others involved in this case have the same last name.

[2] We refer to Gerald Bauder by his first name because others in this case have the same last name.

[3] Louisa Bauder died in May 2012, and Gerald became the sole holder of the promissory note.

[4] We refer to Manuel Alegria by his first name because others involved in this case have the same last name.

[5] We refer to Robert Bauder by his first name because others involved in this case have the same last name.

2

and windstorm insurance. The Notice to Cure also stated that their failure to cure would result in the acceleration of payments due under the note.

A few days before sending the Notice to Cure, Robert sent Sara a text message stating that he understood she had sold the house on 704 Roosevelt Street. Robert's text message stated, "the people at 704 Roosevelt Street stated that you and/or [your ex-husband] sold the property to them, thus it is no longer your residence or mailing address. I will assume that the Neuman St[reet] Address is your primary residence." In June 2013, Robert sent Sara a notice of foreclosure sale to the 704 Roosevelt Street address ("Foreclosure Notice"). The following month, the trustee executed a foreclosure sale pursuant to the deed of trust.

Sara filed a suit to set aside the foreclosure sale, alleging that she was not in default, and that the foreclosure was improper because she did not receive proper notice. Sara sought an injunction and declaratory relief. Sara also sought attorney's fees under the Declaratory Judgments Act.

Following a bench trial, the trial court signed a judgment in which it set aside the foreclosure sale, but did not award attorney's fees. In its findings of fact and conclusions of law, the trial court found that (1) the note holder had reasonable notice of Sara's change of address and the Notice to Cure and Foreclosure Notice were mailed to the wrong address; (2) the trustee did not mail Manuel a letter of acceleration or notice of foreclosure sale, and (3) the foreclosure was defective. Both Sara and Gerald appealed.

## II. ANALYSIS

On appeal, Gerald challenges the setting aside of the foreclosure sale based on three appellate issues: (1) the trial court erred in concluding that Manuel was entitled to notice of the foreclosure, (2) the evidence is legally or factually

insufficient to support the trial court's finding that Sara gave Robert reasonable notice of Sara's change of address, and (3) the trial court erred by rescinding the foreclosure sale without requiring Sara to tender payment of the mortgage debt as a condition of that relief. In her cross-appeal, Sara asserts that the trial court abused its discretion in failing to award her attorney's fees.

## A. Sufficiency of the Evidence Supporting Notice Finding

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. Our task is to determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary

to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

Under his second issue, Gerald asserts that the evidence is legally or factually insufficient to support the trial court's finding that Sara gave Robert reasonable notice of Sara's change of address so that the notices were sent to the wrong address. To lawfully foreclose on property, the mortgagee or trustee is required to comply with the notice requirements set forth in the deed of trust and those prescribed by law. *Houston Omni USA Co., Inc. v. Southtrust Bank Corp., N.A.*, No. 01-07-00433-CV, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.). Before a foreclosure may take place, the mortgage servicer[6] must provide notice of the sale. *See* Tex. Prop. Code Ann. § 51.002(b),(e) (West, Westlaw through 2015 R.S.). Texas Property Code section 51.002, entitled "Sale of Real Property Under Contract Lien," provides notice must be given at least 21 days before the date of the sale by:

(1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

(2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

(3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

*Id.* § 51.002(b). Furthermore, section 51.002(d) provides: "[n]otwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in

---

[6] The statute defines "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by the security instrument. A mortgagee may be the mortgage servicer." Tex. Prop. Code Ann. § 51.0001(3). The trial evidence showed that at all material times Robert was a mortgage servicer under the Act. *See id.*

default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail. . . ." *Id.* § 51.002(d); *Int'l Bank of Commerce v. Rios*, No. 13-11-00524-CV, 2012 WL 1259291, at *3 (Tex. App.—Corpus Christi Apr. 12, 2012, pet. denied) (mem. op). Service of notice by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. Tex. Prop. Code Ann. § 51.002(e).

For a debt secured by the debtor's residence, the term "debtor's last known address" is defined as "the debtor's residence address unless the debtor provided the mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002." *Id.* § 51.0001(2)(A). For a debt that is not secured by the debtor's residence, the "debtor's last known address" is defined as the:

> debtor's last known address as shown by the records of the mortgage servicer of the security instrument unless the debtor provided the current mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002.

*Id.* § 51.0001(2)(b). *See also Kaldis v. Aurora Loan Services*, 424 S.W.3d 729, 732 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Saravia v. Benson*, 433 S.W.3d 658, 665 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Texas Property Code section 51.0021, entitled "Notice of Change of Address Required," provides that a "debtor shall inform the mortgage servicer of the debt in a reasonable manner of any change of address of the debtor for purposes of providing notice to the debtor under Section 51.002." *Id.* § 51.0021.

The record reveals the following:

- The deed of trust states Sara's mailing address is 704 Roosevelt Street.
- Robert collected mortgage payments from Sara twice at the 704 Roosevelt

6

Street address and most of the time at 1825 Neuman Street. Sara occasionally delivered the mortgage payments to Robert.

- The trial court admitted into evidence text messages Sara exchanged with Robert spanning from April 2012 through June 2013. Among them are text messages from Sara asking Robert to meet her at 1825 Neuman Street and asking Robert to pick up mortgage payments at 1825 Neuman Street.

- On May 3, 2013, Robert sent Sara a text that read:

  > Sarah, here are your options as of midnight: 1) deed the contract over to [a third party], in which case her lawyer will draw up the papers and all you will need to do is sign them. At that [point] all obligations and liabilities will transfer to [the third party]. OR 2) Our lawyer and trustee will begin a foreclosure proceeding to surrender the property back to my Dad's estate. [C]ourt and legal costs will be paid by you and we will renegotiate the terms with Veronica through our lawyer.

- Minutes later, Robert sent a second text message that read:

  > "I'm told you sold the house on 704 Roosevelt which means we will have to notify our lawyer of an address change in case you refuse option 1 (transfer of contract)."

- On May 4, 2013, Robert sent Sara further text messages that stated:

  > Also, the people at 704 Roosevelt stated that you and/or [your ex-husband] sold the property to them, thus it is no longer your residence or mailing address. I will assume that the Neuman St[reet] [a]ddress is your primary residence. I will notify our lawyer, who is legal Trustee of the contractual agreement between my Dad's estate and you regarding both properties.

- The trustee sent the Notice to Cure to 704 Roosevelt Street on May 7, 2013. No notice to cure was sent to 1825 Neuman Street.

- The trustee sent the Foreclosure Notice to 704 Roosevelt Street on June 8, 2013. No notice of foreclosure was sent to 1825 Neuman Street.

Gerald asserts that because Sara's residence was 704 Roosevelt Street at the time the deed of trust was executed, she was required to give him written notice of a change in address to make the 1825 Neuman Street address her last known address under section 51.002. The deed of trust is silent with respect to whether and how

the debtor should provide notice of a change of address.

For the purpose of sending notices under subsections (b) and (d) of Property Code section 51.002, the debtor's last known address is defined under either part (A) or (B) of Property Code section 51.0001(2). If part (A) applied in the case under review, then sections 51.002(d) and 51.002(b) required the trustee to send the Notice to Cure and the Foreclosure Notice to Sara's residence address. *See id.* § 51.002(b),(d); § 51.0001(2)(A). No notice was sent to Sara's residence address. Thus, if part (A) applied, notice was sent to the wrong address.

Robert asserts the court should not treat the debt as one secured by Sara's residence because he conclusively proved that 1825 Neuman Street was not Sara's residence at the time the parties signed the deed of trust. Robert argues that because 1825 Neuman Street became Sara's residence after the execution of the deed of trust, Sara was required to provide written notice of change of address. The record does not reveal Sara's residence at the time the parties signed the deed of trust. Sections 51.0001(2)(A), 51.002(b), and 51.002(d) contain no language that explicitly addresses a situation in which the status of the property secured by the debt becomes the debtor's residence after the parties execute the deed of trust. *See id.* § 51.001(2). In any event, if part (B) of Property Code section 51.0001(2) applied, then the notices should have been sent to Sara's last known address as shown by Robert's records.[7] *See id.* § 51.001(2). Robert identified the exhibit of text messages as "a message record off of [his] cell phone." Robert explained that he plugged [the cell phone] into his computer, kept track of the record, and then provided a copy to Sara's attorneys. Sara asserts that these messages are part of

---

[7] Under part (B) if Sara had provided Robert a written change of address before the notices were sent, then the notices should have been sent to the address provided in writing, even if it differed from Sara's last known address as shown by Robert's records. *See* Tex. Prop. Code Ann. § 51.0001(2)(B). But, Sara did not provide Robert with a written change of address before the notices were sent.

Robert's records. Robert does not deny the messages are part of his records, but argues Sara mischaracterized them. We conclude that Robert's text messages are part of his records.

The deed of trust lists 704 Roosevelt Street as Sara's address, but the deed of trust does not contain any provision detailing how Sara should provide notice of a change of address. Robert's records include his receipt of messages from Sara that she was residing at 1825 Neuman Street. Robert's records indicate he was informed that Sara sold the property at 704 Roosevelt Street, and his records indicate that he sent Sara a message stating he would assume her address is 1825 Neuman Street based on the information he had received. Robert's records indicate he sent Sara a message stating specifically that he would assume her address is 1825 Neuman Street and that he would use that address for purposes of giving her notice of foreclosure proceedings. Robert's records do not indicate Sara responded to that text message. Three days later, Robert's attorney, the trustee, sent the Notice to Cure to 704 Roosevelt Street. Robert's records reveal the parties continued to exchange messages, and Sara did not state her address was different than 1825 Neuman Street. Robert's records indicate that throughout the month of May, Robert continued to meet Sara at the Neuman Street address. Gerald argues that the evidence is insufficient to prove Robert had notice Sara was living at 1825 Neuman Street for a variety of reasons, including that Sara's ex-husband stayed there. The relevant inquiry under part (B) of Property Code section 51.0001(2), however, is Sara's last known address as reflected by Robert's records. *See id.* § 51.0001(2)(B); *Kainer v. ABMC Corp.*, No. 01-05-00338-CV, 2006 WL 407794, at *5 (Tex. App.—Houston [1st Dist.] Feb. 23, 2006, no pet.) (mem. op.).

Under the applicable standards of review, the evidence is legally and factually sufficient to support a finding that Sara's last known address as shown by

Robert's records was 1825 Neuman Street. Therefore, if part (B) of Property Code section 51.0001(2) applied, the notices were mailed to the wrong address. Regardless of whether Part (A) or Part (B) of Property Code section 51.0001(2) applied, Sara was not required to give written notice that her address had changed to 1825 Neuman Street. *See* Tex. Prop. Code Ann. § 51.002(b),(d); § 51.0001(2).

Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that Sara gave Robert reasonable notice of Sara's change of address.[8] *See Lido Intern., Inc. v. Lambeth*, 611 S.W.2d 622, 624 (Tex. 1981); *Kaldis*, 424 S.W.3d at 736. Accordingly, we overrule Gerald's second issue.

## B. Equity Supporting Setting Aside of Foreclosure Sale

In Gerald's third issue, Gerald asserts the trial court erred in setting aside the foreclosure sale without requiring Sara to "do equity." Gerald argues equity requires Sara to pay the full balance of the note. This court has held that tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale. *See Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The record evidence showed that at the time of trial, Sara was current on her mortgage payments and consistently had insured the property. Gerald does not explain how Sara failed to tender any payment due. Nor does Gerald state the amount Sara owed or the actions Sara needed to take to satisfy equity. Gerald does not assert that Sara owed the entire balance because the note had been accelerated,

---

[8] The failure to send the Notice to Cure and Foreclosure Notice to the proper address is sufficient to support the trial court's judgment setting aside the foreclosure sale. Accordingly, we need not address Gerald's first issue.

nor does Gerald address how the trial court's findings that the Notice to Cure and "letter of acceleration" were sent to the wrong address affected the acceleration of the note. The record contains evidence that Sara was current on her mortgage payments and had insured the property. The evidence supports the trial court's determination that setting aside the foreclosure was equitable. *See Fillion*, 709 S.W.2d at 246. Accordingly, we overrule Gerald's third issue.

### C. Failure to Award Attorney's Fees

In her sole cross-issue, Sara asserts that the trial court abused its discretion in failing to award her attorney's fees under the Declaratory Judgments Act. Under this statute, the trial court may award reasonable and necessary fees as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West, Westlaw through 2015 R.S.). We review this ruling for an abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). We presume for the sake of argument that the trial court's judgment awarded declaratory relief and that Sara was eligible to recover attorney's fees under the Declaratory Judgment Act for her claim. Sara argues that she was the prevailing party and the trustee under the deed of trust was Gerald's trial counsel. Even presuming Sara was eligible to recover attorney's fees, the trial court did not abuse its discretion in failing to award Sara attorney's fees under these circumstances. *See Kings River Trail Ass'n, Inc. v. Pinehurst Holdings, L.L.C.*, 447 S.W.3d 439, 451–52 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Accordingly, we overrule Sara's sole issue in her cross-appeal.

### III.   CONCLUSION

The trial evidence is legally and factually insufficient to support the trial court's findings that Sara gave Robert reasonable notice of Sara's change of address and that the Notice to Cure and Foreclosure Notice were sent to the wrong address. The trial court did not err in setting aside the foreclosure sale without

requiring Sara to pay the full balance of the note. As for Sara's cross-appeal, the trial court did not abuse its discretion in failing to award Sara attorney's fees under the Declaratory Judgments Act. Having found no merit in any of the parties' challenges on appeal, we affirm the trial court's judgment.


/s/ Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.