# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-10527
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**
January 30, 2023

Lyle W. Cayce
Clerk

In the Matter of Ray Douglas Griffith,

*Debtor*,

Ray Douglas Griffith,

*Appellant*,

*versus*

Lone Star FLCA; Crystal Matulich,

*Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-825

---

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

This appeal arises from a property dispute between Ray Griffith and Lone Star FLCA ("Lone Star"). Because Griffith waived exclusive use of the

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10527

disputed property and Lone Star sent foreclosure notices to Griffith's last known address before the foreclosure sale, we AFFIRM.

## I.    BACKGROUND

### A.    *Lone Star's Foreclosure & Sale of the Property*

On December 8, 2005, Griffith borrowed $137,500 from Lone Star to purchase a property in Eastland County, Texas. The deed of trust that he signed provided:

> Unless otherwise required by law, any notice shall be given by delivering it or mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed notice to all grantors.

Griffin gave the following address in accordance with this provision: 5112 Geddes Avenue, Ft. Worth, Texas ("the Geddes address").

Griffith remarried in 2007 and moved into a house with his new wife at 2916 Sanguinet Street in Fort Worth, Texas ("the Sanguinet address"). By March 2014, he had officially changed his address in Lone Star's system to reflect his move to the Sanguinet address. He made this request orally and Lone Star memorialized his request via an internal memo. In a 2016 letter, he communicated his desire to switch to online banking at Lone Star and noted that he wanted to continue receiving loan statements by mail; he signed the letter with the Sanguinet address.

Beginning in 2017, Griffith made "sporadic and untimely" payments to Lone Star, with his final payment coming in November 2018. Shortly thereafter, Lone Star labeled his account "chronic[ally] delinquent" and sent him four notices of default and acceleration letters to the Sanguinet address. These notices were all mailed from May 2018 through March 2019. On April

2

No. 22-10527

3, 2019, Lone Star sent an additional notice of acceleration and informed Griffith of its intent to foreclose.

Griffith ultimately separated from his wife in 2018 and moved back to the Geddes address. In 2018, he opened a PO Box in Fort Worth, Texas ("the PO Box"). He maintained the PO Box for business and personal affairs, including some correspondence with Lone Star. Following Lone Star's note of foreclosure, he sent a text message to Lone Star, explaining that he is no longer receiving mail at the Sanguinet address. On the same day of his text exchange with Lone Star, he spoke to one of its representatives and "specifically requested that his notice address be changed to" the PO Box. Lone Star memorialized this change of address request through its usual business processes.

From May 2019 to December 2019, Lone Star sent all correspondence to Griffith through the PO Box as he requested. This correspondence included numerous foreclosure notices in June 2019, November 2019, and December 2019. To avoid foreclosure on his property, Griffith filed for bankruptcy under Chapter 13, which cancelled Lone Star's pending foreclosure sale. He subsequently failed to file necessary documents, so the bankruptcy court dismissed his case on December 4, 2019. Lone Star promptly sent additional notices regarding its efforts to sell the property to the PO Box via first class and certified mail. Lone Star sold the property on January 7, 2020, to Crystal Matulich.

### B.    *Bankruptcy Court Proceedings*

On May 18, 2020, Griffith sued Lone Star and Matulich on multiple grounds. Only his wrongful foreclosure and breach of contract claims survived summary judgment. Both claims relied on Griffith's allegation that Lone Star's foreclosure sale was wrongful because "proper notice of the sale

was not given to" him. In response, Lone Star asserted that Griffith's claims were "barred in whole or in part by estoppel and/or waiver."

Ultimately, the bankruptcy court held in Lone Star's favor. It relied on the following as evidence of Griffith's waiver: (1) he explicitly requested a change of address to the PO Box; (2) he never raised any concerns about Lone Star sending notices to the incorrect address; and (3) he had actual knowledge that Lone Star sent multiple business and legal notices to the PO Box. Accordingly, the bankruptcy court concluded that Griffith expressly and impliedly waived the initial loan agreement's requirement that Lone Star only send correspondence to the Geddes address. It additionally concluded that Lone Star complied with Chapter 51 of the Texas Property Code by sending the foreclosure notice to Griffith's last known address. Griffith timely appealed to the district court.

## C.     *District Court Proceedings*

In its Memorandum Opinion and Order, the district court weighed the parties' arguments and concluded that Griffith did little more than argue that "his view of the evidence is correct and that the bankruptcy court's view is incorrect." Relying on the clearly erroneous standard of review, it explained that "because the bankruptcy court's finding that Mr. Griffith waived his contractual right is reasonable and supported by the evidence, the [district court] will not overturn the bankruptcy court."

The district court also considered Griffith's arguments that Lone Star failed to comply with Texas law when it sent foreclosure notices to the PO Box because that was not his "last known address." First, Griffith asserted that his April 2019 texts with a Lone Star representative were a written request to change his last known address. The district court rejected this argument because Griffith "verbally and expressly" directed Lone Star to begin using the PO Box *after* the April 2019 texts. Second, Griffith argued

that the bankruptcy notice filed in his bankruptcy petition established the Geddes address as his last known address. The district court rejected this argument because it reasoned that the bankruptcy notice "could not be reasonably construed to be a notice of address change as contemplated by the Texas Property Code." Moreover, it held that even it did qualify as notice, Griffith did not inform Lone Star of his desire to change his address "in a reasonable manner," as the parties' loan agreement and Texas law required. The district court then affirmed the bankruptcy court in full and issued its order in favor of Lone Star. Griffith timely appealed.

On appeal, Griffith argues that the district court erred in: (1) adopting the bankruptcy court's factual findings regarding his waiver; (2) affirming the bankruptcy court's conclusion that he waived his right to receive any notice of foreclosure at the Geddes address; (3) adopting the bankruptcy court's findings regarding his last known address; and (4) affirming the bankruptcy court's conclusion regarding his last known address.

## II.   STANDARD OF REVIEW

"We review the decision of a district court sitting as an appellate court in a bankruptcy case by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Matter of Lopez*, 897 F.3d 663, 668 (5th Cir. 2018). "We review a bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error." *Id.*

"A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *In re Missionary Baptist Found. of Am.*, 712 F.2d 206, 209 (5th Cir. 1983). The Supreme Court has recognized that where "the district court's account of the evidence is plausible in light of the record . . . [we] may not reverse it even though

convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). The Court has similarly held that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

## III.    Discussion

### A.    *Waiver*

Texas law provides that the elements of waiver include: "'(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right.'" *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). Waiver may also be evidenced by a party's conduct if they purposely mislead "the opposite party into an honest belief that the waiver was intended or assented to." *Alford, Meroney & Co. v. Rower*, 619 S.W.2d 210, 213 (Tex. App.—Amarillo 1981); *see also Tenneco Inv. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) ("Silence or inaction, for so long a period as to show an intention to yield the known right, is . . . enough to prove waiver.").

Griffith argues that the bankruptcy court erroneously held that he, expressly and/or impliedly, waived his right to receive Lone Star's foreclosure notice at the Geddes address. He asserts that the bankruptcy court's conclusion lacked a sufficient basis in the record, which amounts to clear error. He also contends that the district court similarly erred in affirming the bankruptcy court's conclusions for the same reason. We disagree.

Here, the district court did not clearly err in adopting the bankruptcy's court's findings of facts and conclusions of law because they

were plausible in light of the record. Ultimately, Griffith makes the same request on appeal as he did at the district court: that a reviewing court construe the evidence in his favor instead of Lone Star's. Put another way, he requests a third look at the underlying factual findings in search of a different result. Indeed, Griffith concedes that he has not appealed any legal conclusions reached within the bankruptcy and district court opinions. Our task then, is to discern what facts the district court adopted from the bankruptcy court and to evaluate whether those facts permit the conclusions drawn by the district court.

The bankruptcy court benefitted from observing the proceedings during the initial bench trial and weighing the precise facts that Griffith brings before this court now. It concluded that Griffith expressly and impliedly waived usage of the Geddes address for Lone Star's foreclosure notices. The district court adopted the bankruptcy court's findings, satisfied that the record supported them and that the bankruptcy court did not clearly err. Specifically, the district court noted that Griffith:

> (1) "twice made an express change-of-address request to Lone Star verbally over the phone"; (2) "verbally and expressly asked [Lone Star] to send notices to Mr. Griffith's [PO Box] rather than to the Geddes Address"; (3) "received the June 2019 Foreclosure Sale Notice at the [PO Box] and never raised any concerns to Lone Star that such notices should be sent to the Geddes Address instead"; (4) "received the November 2019 Foreclosure Sale Notice at the [PO Box] and never raised any concerns to Lone Star that such notices should be sent to the Geddes Address instead"; and (5) "never raised any concerns to Lone Star that [his monthly bank statements] should be sent to the Geddes Address instead [of his PO Box])."

The district court also considered and rejected Griffith's arguments that Lone Star proffered no facts to support its contention that he had actual knowledge that Lone Star sent foreclosure correspondence to the PO Box. On that point, the record indicates that Griffith regularly checked the PO Box and that Lone Star sent, by certified and first class mail, correspondence to that address both before and after the foreclosure sale was completed.

As the district court recognized, the record is replete with facts supporting that Griffith explicitly and impliedly waived exclusive use of the Geddes address. At best, he creates another plausible take on the evidence—that, however, is not enough to demonstrate that the bankruptcy or district courts clearly erred. *See Anderson*, 470 U.S. at 574. Because these courts did not clearly err in finding or adopting the facts and conclusions of law that support Griffith's express or implicit waiver of the Geddes address, we affirm. *In re Missionary Baptist Found. of Am.*, 712 F.2d at 209.

## B.    *Griffith's Last Known Address*

Texas Property Code § 51.0021 covers debtors' changes of address. It provides that "a debtor shall inform the mortgage servicer of the debt in a reasonable manner of any change of address of the debtor for purposes of providing notice to the debtor under [§] 51.002." Section 51.0001 defines "last known address" and explains that:

> the debtor's last known address means . . . the debtor's last known address as shown by the records of the mortgage servicer of the security instrument unless the debtor provided the current mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by [§] 51.002.

In its dealings with Griffith, Lone Star had to "give notice of sale . . . as required by the applicable law in effect at the time of the proposed

sale." In giving notice of the foreclosure sale, Texas law required that Lone Star direct its notice to Griffith's "last known address." TEX. PROP. CODE § 51.002(e). The bankruptcy court determined that Lone Star complied with Texas law in delivering Griffith's notice to the PO Box because the record demonstrated that it was his last known address. The district court considered and adopted these facts and reached the same conclusion. Griffith contends that the district court erred in adopting the bankruptcy court's findings of fact and conclusions of law regarding his last known address. We disagree.

In support of his contentions, Griffith maintains the same theories as he did at the district court: (1) that *Bauder v. Alegria*, 480 S.W.3d 92, 97 (Tex. App.—Houston 2015) supports his position that his April 23, 2019 text message exchange with a Lone Star representative sufficed as notice of a change to the Geddes address under § 51.0021; and (2) that the bankruptcy notice in his bankruptcy petition establishes the Geddes address as his last known address. On the latter point, he argues that even if his April 2019 phone call overrides his text messages from earlier that day, his bankruptcy notice came long after both events and established the Geddes address as his last known address.

Here, Griffith's arguments fail because he misapplies *Bauder* and the bankruptcy petition is not a notice of address change under § 51.0021. First, Griffith relies on a footnote in *Bauder* to argue that he followed Texas change-of-address law when he changed to the Geddes address during his April 2019 text with a Lone Star representative.[1] However, as the district court

---

[1] *See* 480 S.W.3d at 97 n.7 (providing that "if [the debtor] had provided [the lender] a written change of address before the notices were sent, then the notices should have been sent to the address provided in writing, even if it differed from [the debtor's] last known address as shown by [the lender's] records").

explained, this "footnote supports the proposition that a debtor's written instruction overrides any competing information in the mortgage servicer's record *at the time* the written instruction was made. It does not, however, support the proposition that a written instruction also overrides a *subsequent* change of address." On April 23, 2019, Griffith texted Lone Star at 5:04 a.m. and requested to use the Geddes address for all correspondence moving forward. A few hours later, however, he called Lone Star and requested all correspondence be directed to the PO Box. Lone Star then circulated an internal memorandum reflecting Griffith's second request and mailed relevant documents thereafter accordingly.

Second, Griffith argues that Lone Star had a "duty" to inspect his 2019 bankruptcy notice and update its records to reflect the address on the notice as his last known address. However, Griffith cites to no authority that supports his argument. Texas law explains that a debtor's last known address comes from two sources: (1) "the debtor's last known address as shown by the records of the mortgage servicer," or (2) the debtor's subsequent written request for the mortgage servicer to change the original address. Tex. Prop. Code § 51.0001. As previously discussed, Lone Star had the PO Box in its records, so the first option is foreclosed. So, that means that Griffith argues that the bankruptcy notice qualifies as a written request for Lone Star to change the original address. That position is untenable. As Texas law explains, change of address requests must be reasonably communicated and express in nature. *See* Tex. Prop. Code §§ 51.0021, 51.0001. The bankruptcy notice was not sufficient to reasonably communicate his request for a change of address; nor did it evince Griffith's intent for Lone Star to view the document in that light. As the record demonstrates, Griffith provided the bankruptcy notice to prevent Lone Star from selling the property. Nothing suggests that he used the bankruptcy notice to alert Lone Star about a new address. He argues that Lone Star should have made some

inference regarding his address from the bankruptcy petition, but that situation is precisely what the Texas Property Code seeks to prevent in requiring debtors to submit change of address requests in writing. *See id.* Because the bankruptcy notice does not qualify as a written change of address request, we affirm.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.