

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00481-CV

———————————————

K.B., Appellant

V.

E.B., Appellee

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-757158-24

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

### I. Introduction

K.B. appeals from a fifty-year protective order rendered against him on behalf of his ex-wife, E.B. Broadly construing his complaints, K.B. argues that Section 42.072 of the Texas Penal Code, upon which the protective order was based, violates the First Amendment; that the evidence was legally and factually insufficient to justify the trial court's order; and that the order's scope of protected parties impermissibly includes his adult children. Because we conclude that K.B. did not preserve his First Amendment complaint, that the trial court's order was supported by legally and factually sufficient evidence, and that the scope of the protective order was authorized by statute, we affirm the trial court's issuance of the protective order.

### II. Background

K.B. and E.B. were married in 2006 and divorced in August 2011. In September 2011, the trial court[1] entered an Agreed Final Protective Order under Family Code Section 85.021 pursuant to which K.B. was prohibited from, among other things, (1) communicating directly with E.B. or their two children in a threatening or

---

[1]In this memorandum opinion, all references to the "trial court" refer to the 360th District Court of Tarrant County.

harassing manner, (2) contacting E.B. except through her attorney, or (3) contacting

their children except in accordance with a separate supervised visitation order.[2]

In August 2013, K.B. was convicted of stalking E.B. and sentenced to ten

years' confinement. *Beckstrand v. State*, No. 02-13-00399-CR, 2015 WL 5297591, at *1–

2 (Tex. App.—Fort Worth 2015, no pet.) (mem. op., not designated for publication);[3]

*see* Tex. Penal Code Ann. § 42.072(a)(1)(A), (a)(2), (a)(3)(A). The next month, the trial

court extended the Agreed Final Protective Order for ten years; its new expiration

date was September 11, 2024.

On September 16, 2024, the Tarrant County District Attorney's Office applied

for a protective order for E.B. "or any member of [her] family or household" under

Chapter 7B of the Texas Code of Criminal Procedure. The State alleged that E.B. was

a victim of stalking by K.B. *See* Tex. Code Crim. Proc. Ann. art. 7B.001(a)(1); Tex.

Penal Code Ann. § 42.072. K.B., who was incarcerated, represented himself.

---

[2]Additionally, K.B. was found guilty of burglary with intent to assault after a conflict over possession of the children. *Beckstrand v. State*, No. 02-12-00480-CR, 2015 WL 1544077, at *1–5 (Tex. App.—Fort Worth 2015, no pet.) (mem. op., not designated for publication). We reversed this conviction for jury-charge error and remanded the case for a new trial. *Id.* at *10–11. We did not, as K.B. appears to argue, find him actually innocent of the charges or find that his asserted defenses were true. *Id.* at *6–10.

[3]We affirmed this conviction. *See* 2015 WL 5297591, at *13.

After an evidentiary hearing, at which both K.B. and E.B. testified,[4] the trial court entered a fifty-year protective order, prohibiting K.B. from the following:

(1) communicating:

    (a) directly or indirectly with [E.B.] or any member of [E.B.'s] family or household in a threatening or harassing manner; or

    (b) in any manner with [E.B.] or any member of [E.B.'s] family or household, except through [E.B.'s] attorney or a person appointed by the Court, if the Court finds good cause for the prohibition;

(2) going to or within 200 yards of the residence or place of employment or business of [E.B.] or any member of [E.B.'s] family or household:

    a. Any residence of [E.B.] in Tarrant County, Texas or any other subsequent residence;

    b. Any place of employment or business of [E.B.] in Tarrant County, Texas or any other subsequent place of employment or business;

(3) engaging in conduct directed specifically toward [E.B.] or any member of [E.B.'s] family or household, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass [E.B.];

(4) possessing a firearm, unless the alleged offender is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision; and

(5) tracking or monitoring personal property or a motor vehicle in the possession of the applicant or of a member of the applicant's family or household, without the applicant's effective consent, including by:

    i. using a tracking application on a personal electronic device in the

---

[4]The trial court also admitted evidence of unsolicited correspondence from K.B. to E.B.'s home, workplace, and email.

4

possession of the applicant or the family or household member or using a tracking device; or

ii. physically following the applicant or the family or household member or causing another to physically follow the applicant or household member.

The trial court also suspended K.B.'s handgun license.

K.B. timely filed a notice of appeal.

### III. Unconstitutionality of Penal Code Section 42.072 Not Preserved

One of the complaints discernible from K.B.'s briefing is that Penal Code Section 42.072, which defines the offense of stalking, is unconstitutional pursuant to the United States Supreme Court's opinion in *Counterman v. Colorado* because it lacks a *mens rea* requirement.[5] 600 U.S. 66, 69, 77–78, 82, 145 S. Ct. 2106, 2111, 2116–17, 2119 (2023) (holding that, in a prosecution based on statements threatening violence, the First Amendment requires proof that the defendant "had some subjective understanding of the threatening nature of his statements"). Although K.B. raised this complaint in the trial court, he did so in a post-judgment letter, which we broadly construe as a motion for new trial. *See In re M.E.B.*, No. 14-23-00928-CV, 2025 WL 899846, at *2 (Tex. App.—Houston [14th Dist.] Mar. 25, 2025, no pet.) (mem. op.).

Constitutional challenges are subject to error-preservation requirements. *See Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 WL 4924755, at *5 (Tex. App.—Fort

---

[5]Although we informed the Texas Office of the Attorney General about this constitutional argument, it has not intervened in this appeal. *See* Tex. Gov't Code Ann. § 402.010(a); *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 697 (Tex. 2022).

Worth Oct. 11, 2018, no pet.) (mem. op.); *In re K.G.*, No. 05–14–01171–CV, 2016 WL 3265215, at \*11 (Tex. App.—Dallas June 13, 2016, no pet.) (mem. op.); *In re J.D.*, No. 02-11-00328-CV, 2012 WL 3115804, at \*2 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.). Rule of Appellate Procedure 33.1(a)(1)(A) provides that to properly preserve a complaint for appeal a party must timely bring it to the trial court's attention. Tex. R. App. P. 33.1(a)(1)(A). An objection is considered timely if it is asserted when the potential error becomes apparent. *Evangelista-Ysasaga v. Pana*, No. 02-21-00271-CV, 2023 WL 3370716, at \*1 n.5 (Tex. App.—Fort Worth May 11, 2023, no pet.) (mem. op.); *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied); *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet. denied).

*Counterman* was issued in 2023, before the State filed this protective-order application. In addition, one of the exhibits K.B. attached to his postjudgment letter is a June 30, 2024 pretrial application for writ of habeas corpus in his then-pending criminal case, in which he makes this same constitutional argument. Accordingly, we conclude that K.B.'s postjudgment constitutional complaint in the protective-order proceeding was untimely. *See In re Y.H.T.*, No. 10-14-00189-CV, 2015 WL 1021094, at \*2–3 (Tex. App.—Waco Mar. 5, 2015, no pet.) (mem. op.); *Laven v. THBN, LLC*, No. 14-13-00440-CV, 2014 WL 6998098, at \*3–4 (Tex. App.—Houston [14th Dist.] Dec. 11, 2014, no pet.) (mem. op.). We therefore overrule this complaint.

## IV. Sufficiency of the Evidence

Another complaint we discern from K.B.'s briefing is that the evidence is legally and factually insufficient to support the protective order.

## A. Standards of Review

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). A court of appeals cannot make original fact findings; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986).

We may sustain a challenge to the legal sufficiency of the evidence—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *see Caldwell v. State ex rel. Zimmerman*, No. 03-22-00464-CV, 2024 WL 3906789, at *11 (Tex. App.—Austin Aug. 23, 2024, pet. denied) (mem. op.) (applying general civil standard of review to Chapter 7B protective orders); *Z.S. v. L.S.*, 676 S.W.3d 845, 848–49 (Tex. App.—Fort Worth 2023, no pet.) (same). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651, (Tex. 2007); *City of*

*Keller v. Wilson*, 268 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727-28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosp., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the evidence supporting the finding is so weak, or so contrary, to the overwhelming weight of all evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). Generally, we need not detail supporting evidence when upholding the factual sufficiency of the evidence underlying the court's judgment. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006); *Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex. 1994) (op. on reh'g).

8

**B. Required Findings**

To issue the protective order pursuant to Code of Criminal Procedure Chapter 7B based on the State's allegations of stalking, the trial court had to find that "there are reasonable grounds to believe that" E.B. was "a victim of . . . stalking." Tex. Code Crim. Proc. Ann. art. 7B.003(a). A criminal conviction is not required. *Bevers v. Mabry*, No. 05-22-00713-CV, 2024 WL 469550, at *7 (Tex. App.—Dallas Feb. 7, 2024, pet. denied) (mem. op.).

Texas Penal Code Section 42.072 provides that a person commits a stalking offense if "on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person," the actor

> knowingly engages in conduct that:
>
>> (1) constitutes an offense under Section 42.07 [Harassment], or that the actor knows or reasonably should know the other person will regard as threatening:
>>
>> (A) bodily injury or death for the other person; or
>>
>> (B) that an offense will be committed against:
>>
>>> (i) a member of the other person's family or household;
>>>
>>> (ii) an individual with whom the other person has a dating relationship; or
>>>
>>> (iii) the other person's property;
>>
>> (2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship:

(A) to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship, or the other person's property; or

(B) to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person under circumstances similar to the circumstances of the other person to:

(A) fear bodily injury or death for the person;

(B) fear that an offense will be committed against a member of the person's family or household or an individual with whom the person has a dating relationship;

(C) fear that an offense will be committed against the person's property; or

(D) feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code Ann. § 42.072(a).

The stalking statute thus prohibits conduct that constitutes a harassment offense as well as conduct that the actor knows or reasonably should know that the other person will regard as threatening bodily injury, death, or a property offense. *Bevers*, 2024 WL 469550, at *7. Under Section 42.072(c), a scheme or course of conduct can include different types of conduct described in Section 42.072(a) if engaged in on more than one occasion. *Id.* (citing Tex. Penal Code Ann. § 42.072(c)).

10

Section 42.072 "incorporates (1) an intent element, (2) a subjective harm element, and (3) an objective harm element." *Id.* at *8.

## C. Evidence is Sufficient

E.B.'s affidavit attached to the application for protective order—of which the trial court took judicial notice and to the substance of which E.B. later testified was "true and correct"—attests to the following, in pertinent part:

> [K.B.] continues to contact me against my wishes. I have told [K.B.] not to call me. I have told [K.B.] not to text me. I have told [K.B.] not to come to my job. I have told [K.B.] not to come to my home. I have told [K.B.] not to contact me on social media. I have told [K.B.] not to send me letters. I have told [K.B.] to leave me alone.
>
> [K.B.] has ignored my requests for him to leave me alone and not to contact me.
>
> . . . .
>
> Since September of 2011, [K.B.] has sent me pornographic content via email. I was afraid for my life. I called the police.
>
> Since September of 2011, [K.B.] has sent me disturbing letters to my home and to my job. On or about July of 2023, [K.B.] sent me a pornographic letter covered in his semen.
>
> [K.B.] has mental health issues.
>
> I need a protective order because I am afraid that [K.B.] will hurt me or kill me.

The trial court admitted evidence of seven unsolicited letters that K.B. sent E.B. from 2021 through 2023. K.B. sent these letters while subject to a prior

11

protective order of which he had knowledge.[6] In these letters, K.B. repeatedly states his intention to have sex with E.B. and the fact that he still considers them married. One of the letters "was moist and wet and covered in semen" and described in graphic detail his fantasy of engaging in sexual acts with E.B.[7] Also included were letters sent in envelopes addressed to E.B. but written to others, including the couple's son and daughter.[8] The trial court also admitted evidence that K.B. had attempted to include her as an "inmate contact request" by email.

E.B. testified that K.B.'s emails, calls, and texts—including his sending items to her workplace—had annoyed her; that his calling, texting, emailing, and showing up at her house[9] had harassed her; that his "repeatedly contacting [her] without [her] permission or consent" alarmed her; that she had been "traumatized and emotionally abused constantly" by his "treatment"; and that she had been tormented by the "constant barragement [sic] of abuse." She was embarrassed to explain the content of his letters—particularly the sperm-covered letter—to her manager at work.

---

[6]In another letter, he admitted deceiving his attorney into letting him call E.B. on his attorney's cell phone by saying he was going to call someone else.

[7]Another of the exhibits includes several sheets of paper that appear to be full of nonsensical phrases, but they include the following: "DIE IN The Green RIVER GAME"; "CHOKE ON THIS Rooster"; and "WARNING DEATH becomes HER America."

[8]In the letters to his children, K.B. accused E.B. of abducting them and being the reason they could not be together.

[9]Taken in context of the rest of her testimony, it appears that E.B. was referring to the incident underlying K.B.'s 2011 burglary charge and conviction.

Additionally, E.B. testified that such contact frightened and disturbed her because K.B. had showed no remorse and because she thought "everything" he had sent her was "disgusting." She feared for her life because in his emails to her, he was "extremely angry" and was "blaming" her." She also thought that his letters were about rape because in them he had talked about engaging in sexual activities with her even though she would not consent. He also talked about guns, and he threatened that he would not stop his conduct: "I will STALK the ends of the Universe to find my way back into your loving arms." E.B. testified that she was "scared to open the mailbox" and "scared of [K.B.'s] showing up at the house." She was afraid she would not be able to protect herself "or the kids."[10] However, E.B. admitted on cross-examination that she and K.B. had not had any "contact"[11] or spoken directly to each other, except in court, since 2011.

K.B. admitted writing the letters. He claimed that he regretted writing some of them but that he "was not well" when he wrote them and was "under duress" because he was incarcerated. He also admitted that some of them may have been "inappropriate." On cross-examination, he asked E.B., "[Y]ou haven't responded to any of the letters that I've written, even though I asked you, you know, if you don't want me to write to you, please -- please write back and let me know?" E.B.

---

[10]E.B. did not testify about where the parties' adult children were living or if anyone else was living at her residence.

[11]From the context of K.B.'s questioning of E.B., it appears that by "contact," he meant in any way other than by letter or email.

responded, "The protective order was my written statement that I don't want to have any contact with you." When K.B. attempted to have E.B. admit that no "domestic violence" had occurred during their relationship, she answered, "All the emotional abuse with all those letters and those nasty things you sent to my home and work, yes."

K.B. engaged in the conduct at issue despite the trial court's issuance of two previous protective orders and even while incarcerated.[12] His convictions for burglary and stalking, and related confinement, did not deter him from engaging in the conduct. He has continued to attempt to relitigate the events underlying the parties' divorce and the issuance of the prior protective orders, communicating to E.B. that he refuses to accept her decision to end their marriage.

The evidence shows that K.B. sent the letters to E.B. knowing that she would regard them as threatening bodily injury; that E.B. was placed in fear of bodily injury and was also "harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, [and] embarrassed"; and that a reasonable person in similar circumstances would fear bodily injury and feel "harassed, terrified, intimidated, annoyed, alarmed, abused,

---

[12]K.B. argues that the only way he had of discovering his adult children's whereabouts was by contacting E.B. But K.B. cites no law indicating that this is a valid defense to a stalking offense, and the content of his letters was more directed to E.B. herself—including K.B.'s assertions that they were still married and should engage in sexual relations—than to attempting to discover an alternative method of contacting his adult children. In fact, in one of the letters—addressed to his son—he mentioned information that he says he received directly from her. And in another letter addressed to both his son and daughter, he wrote, "You are both old enough that I no longer have to go through your mom to have a relationship with you."

14

tormented, [and] embarrassed." We hold that the evidence is legally and factually sufficient to support the trial court's finding that reasonable grounds exist to believe E.B. was a victim of stalking. *See Houston v. Weissinger*, No. 14-22-00754-CV, 2024 WL 45337, at *3–4 (Tex. App.—Houston [14th Dist.] Jan. 4, 2024, no pet.) (mem. op.); *Jones v. Frazier*, No. 01-21-00297-CV, 2022 WL 3588752, at *9 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op.); *cf. Morris v. State*, No. 07-16-00259-CR, 2017 WL 655530, at *2 (Tex. App.—Amarillo Feb. 16, 2017, pet. ref'd) (mem. op., not designated for publication) (affirming criminal conviction for stalking based on letters sent to the complainant.

We overrule K.B.'s legal and factual sufficiency complaint.

## V. Scope of Protective Order

K.B. also argues that the protective order wrongfully includes in its scope of protected persons the couple's children, both of whom are now adults. K.B. preserved this general argument in the trial court: "[M]y main objection to this protective order is that it includes no contact with [the couple's now adult children]. . . . It's brought to prevent me from having any kind of relationship with [them] and . . . to prevent our reconciliation."[13] *See* Tex. R. App. P. 33.1(a)(1).

---

[13]K.B. also claims that the order violates his adult children's constitutional rights. But he does not cite any authority or make any argument establishing his standing to raise such a claim on their behalf. *See* Tex. R. App. P. 44.1(a).

15

Code of Criminal Procedure Article 7B.001(a) describes the persons who "may file an application for a protective order under th[at] subchapter without regard to the relationship between the applicant and the alleged offender":

> (1) a person who is the victim of an offense under Section . . . 42.072 . . . Penal Code;
>
> (2) any adult, including a parent or guardian, who is acting on behalf of a victim described by Subdivision (1), if the victim is younger than 18 years of age or an adult ward; or
>
> (3) a prosecuting attorney acting on behalf of a person described by Subdivision (1) or (2).

Tex. Code Crim. Proc. Ann. art. 7B.001(a).

Once the trial court makes the requisite finding necessary to issue the protective order,[14] Article 7B.005 specifically authorizes it to include "any member of the applicant's family or household" in the protective order's prohibited conduct. *Id.* art. 7B.005(a). In her application, E.B. specifically asked for the protective order to apply to her family and household. *See* Tex. R. Civ. P. 301. By statutory definition, E.B.'s adult children are members of her family for protective-order purposes. *See* Tex. Fam. Code Ann. § 71.003; Tex. Gov't Code Ann. § 573.022(a)(1).

Although the Texas Supreme Court has recently reversed a Family Code protective-order that banned "all communication between a parent and her [minor] children for more than two years"—because it implicated the fundamental right to

---

[14]As we have already concluded, the evidence was sufficient to support the trial court's finding that there were reasonable grounds to believe that E.B. was a victim of stalking. *See id.* art. 7B.003(a).

16

parent and had not been issued on clear and convincing evidence—that court did not extend its holding to protective orders implicating contact with adult children, nor did it rely on reasoning related to parental relationships with adult children. *See Stary v. Ethridge*, 712 S.W.3d 584, 596 (Tex. 2025); *see also* Tex. Fam. Code Ann. § 101.003(a) (defining "[c]hild" under the Family Code as "a person under 18 years of age who is not and has not been married or who has not had the disabilities of minority removed for general purposes"), § 101.025 ("'Parent–child relationship' means the legal relationship between a *child* and the child's parents as provided by Chapter 160." (emphasis added)). K.B. has not argued that a higher standard of review should apply here, nor did he provide authority supporting an argument that a Chapter 7B protective order cannot properly include adult children within its scope of protected persons. *See, e.g., Henry S. Miller Com. Co. v. Newsom, Terry & Newsom, LLP*, 709 S.W.3d 562, 575 (Tex. 2024); *In re Marriage of Peralta & Garcia*, No. 05-23-00217-CV, 2025 WL 251339, at *6 n.6 (Tex. App.—Dallas Jan. 21, 2025, no pet.) (mem. op.). Accordingly, we overrule K.B.'s complaint about the protective order's scope.

## VI. Nondispositive Complaints

In his briefing, K.B. raises other complaints that are either nondispositive or seek remedies that we do not have the authority to grant:

- K.B. argues that E.B.'s alleged violation of a mediated settlement agreement in their divorce "SUPERSEDES EVERY COMPLAINT BROUGHT BY [E.B.] AND THE STATE OF TEXAS IN THE CRIMINAL AND FAMILY COURTS."

17

• K.B. also argues that the trial court's issuance of the protective order breaches his plea agreement in a related criminal case. In addition to seeking reversal of the protective order, he asks us to issue mandamus relief against the judge of the 432nd District Court, to find him actually innocent of stalking, and to enjoin the District Attorney from prosecuting him any further.

• K.B. also alleges that the District Attorney's Office conspired with E.B. to obtain improper convictions against him and that an assistant district attorney coerced E.B. into seeking the protective orders. Included in this complaint is the allegation that the District Attorney's office has a conflict of interest.

• K.B. further requests that we recommend E.B. for psychological counseling and advise a structured reunification plan between him and his adult children.

• Finally, K.B. asks us to (1) refer this case to the United States Department of Justice and the Texas Attorney General to review judicial sanctions, (2) make a finding that one of the recitations of his name in the appellate record is a fraudulent imposition upon him and strike that name from the public record, and (3) remand this case for a consideration of damages.

K.B.'s complaints about the prior family-court cases and criminal convictions are impermissible collateral attacks. *See Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009); *In re A.C.R.*, No. 11-22-00358-CV, 2023 WL 3872722, at *11 (Tex. App.—Eastland June 8, 2023, no pet.) (mem. op.); *$60,427.11 U.S. Currency v. State*, No. 02-18-00165-CV, 2019 WL 3024475, at *6 (Tex. App.—Fort Worth July 11, 2019, no pet.) (mem. op.). Moreover, no evidence in the record supports his contentions about the District Attorney's Office. And K.B. provides no authority authorizing us to grant the relief he seeks in his latter two requests. *See* Tex. R. App. P. 43.2.

We therefore overrule these complaints as well as any other complaints in K.B.'s briefing.

## VII. Conclusion

Having overruled all of K.B.'s complaints, we affirm the trial court's order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 7, 2025